TAYLOR *vs.* THE CENTRAL RAILROAD AND BANKING COMPANY OF GEORGIA.*

1. We see no such error in the charge of the court, or in its failure or refusals to charge, or in its exclusion of evidence, as to call for a new trial.

2. The damages are not excessive.

3. When a new trial is granted without specifying the ground of the grant, it will be affirmed upon any satisfactory ground taken in the motion.

4. In a proper case, where the motion alleges that "the verdict is contrary to the law" and "contrary to the evidence" and "without evidence to support it," the judge may adjudicate that it is "decidedly and strongly against the weight of the evidence," without that ground being specially taken in the motion.

5. There is no absolute or invariable rule limiting the granting of new trial, in the court below, on that ground, to the first grant.

6. After one such grant on that ground, a subsequent grant on account of supposed conflict between the evidence and the verdict will be closely scrutinized to see that the discretion of the court below has

---

*SIMMONS, J., being disqualified, Judge JOHN T. CLARKE, of the Pataula circuit, was designated to preside in his stead.

been justly and wisely exercised in view of the peculiar issues and facts of each case, and having due regard to the general considerations of the fitness of juries to ascertain facts, and of the necessity that there must be some end to litigation.

7. The grant of a second new trial in this case was, upon careful scrutiny, not unjust or unwise.

8. In view of the wide-spread local interests and excitements connected with the case, and the large amounts to be affected by the litigation of which it is a part, and of the far-reaching responsibilities which may follow the precedent, we feel less hesitation in sanctioning this grant of a second rehearing upon the facts. (Headnotes by the court.)

February 13, 1888.

Charge of Court. Evidence. New Trial. Damages. Practice in Supreme Court. Practice in Superior Court. Before Judge Boynton. Pike Superior Court. April Adjourned Term, 1887.

Reported in the decision.

A. A. Murphy; A. M. Speer; W. R. Taylor; J. A. Hunt; J. F. Redding, for plaintiff in error.

Lawton & Cunningham; R. F. Lyon; John I. Hall; John J. Hunt; John D. Stewart; T. B. Cabaniss, for defendant.

Clarke, Judge.

On the 17th of October, 1884, a conflagration consumed a great part of the town of Barnesville. The fire began in a lot of cotton bales accumulated near the depot, on the right of way of the defendant, awaiting shipment. The plaintiff's house was burned. The suit for the value of it and of the goods therein resulted in a verdict for the plaintiff in the sum of thirty-five hundred dollars. Defendant moved for a new trial on fourteen grounds. The judge granted the motion without specifying on what ground. Plaintiff excepts.

1. In such omissions to specify, if any one of the grounds

in the motion " is right," " the discretion " of the court below will " not be controlled." 48 *Ga.* 187.

2. One ground of the motion was excess of damages. We think that not sustained by the evidence.

3. The thirteenth ground is the exclusion of the testimony of one Starr, that " he was acquainted with most of the railroads in this State, that he has traveled over various railroads in the State of South Carolina and in this State, and that the manner of receiving and shipping cotton from open platforms was the same on other roads of those States as that of defendant at Barnesville."

Without deciding positively that custom cannot be shown as evidence bearing on the question of negligence, in some instances, it is sufficient to say about the present complaint that the court below distinctly charged the jury that " the defendant had the right to erect and maintain on its right of way a cotton platform for receiving and shipping cotton, and the defendant had the right to collect cotton on such place for shipment in such quantities as it saw proper." Moreover, the counsel for plaintiff conceded that there was no negligence in the manner of receiving cotton on the open platform for shipment, nor in the accumulation or keeping of it there for that purpose. They insisted that it was not properly guarded, and that proper means were not kept about it for extinguishing fires. We think, therefore, that the defendant was not injured by the exclusion of Starr's testimony.

The movant made a number of objections to the charge as delivered, and complained of several refusals to charge as requested. After patient attention to learned argument, and careful comparison of the full charge in the record with those objections, we are of the opinion that the charge was legal and fair. Neither do we think that the court erred in failing to give in charge *verbatim* the requests stated in the motion. Those requests, so far as legal and safe, were substantially presented by the court. In these things, we see nothing which would justify this court in

granting a new trial, had the presiding judge refused it. *Swint, administrator, vs. Central Railroad et al.* 75 *Ga.* 888.

4. This brings us to consider the two first grounds, viz. that " the verdict is contrary to law," and " that it is contrary to evidence, and without evidence to support it." Here arises a point made by the counsel for plaintiff in error, that the judge below could not, upon this pleading in the motion, adjudicate the proposition that " the verdict is strongly and decidedly against the weight of the evidence," so as to authorize a new trial on that ground, as provided in the code, §3717. We think otherwise. The allegation that " the verdict is contrary to law and evidence," and " without evidence to support it," affirms the greatest degree of faultiness of which a verdict is capable, and includes the less degree that it is " strongly and decidedly against the weight of the evidence." Upon such an allegation, the judge may find the complaint partially true, and sufficiently so to be a ground for a new trial. 75 *Ga.* 888. In this case, however, it appears that the judge had granted the defendant below a new trial from an earlier verdict for twenty-seven hundred dollars. The question, therefore, arises, whether a second new trial can be allowed in such a case on the ground that the verdict is so against the weight of evidence.

This court has held, in cases too numerous for citation to be needful, that where there is any evidence to sustain the verdict, and the court below has refused the new trial, the judgment will not be reversed because the weight of the evidence is strongly and decidedly against it. It cannot be denied that there was evidence on every issuable point in support of this verdict. We could not, therefore, grant a new trial, had the presiding judge refused to do so. The principle on which that rule is based may well be distinctly stated in this case. This court having no original jurisdiction, but being a tribunal for the correction of errors of law in lower courts, and the superior courts being,

as matter of original jurisdiction, clothed with discretion to pass upon motions for new trials ( *Gay vs. Parker*, 74th *Ga.* 407), a judgment granting or refusing a rehearing will be reversed only when this court can affirm that such judgment is contrary to law. The judge presiding below is justly recognized as enjoying superior advantages for insight into the causes which control juries, and for estimating the value of testimony adduced before him, than the appellate court can have. A serious deference is, therefore, exercised by the reviewing court towards the lower one. Obviously, this presumption in favor of the legality of the judgment below arises as well upon a refusal as upon a grant of a new trial. But upon sound principles of reason, that presumption may well be allowed greater strength in the latter than in the former case. 42 *Ga.* 78, *Salter vs. Glenn et al.* A denial of a rehearing is a finality to the dispute. A new trial, unwisely or unjustly allowed, may furnish the remedy for its own wrong in the opportunities which it affords both parties for attaining justice. Upon like sound reason, greater deference may be shown to a first grant of new trial, or the presumption in favor of its legality may be esteemed stronger, than in case of a second such allowance. In the former, the judgment is opposed by only one verdict; in the latter, a second jury have considered the case, presumably with more care and under better lights, and two verdicts oppose the new trial. The general interest, too, which calls for an end to litigation, comes in with greater force against the second new trial. The same reasons would apply with accumulated power in the instance of a third or a fourth rehearing.

Now upon these principles we can harmonize the numerous decisions of this court, allowing, perhaps, for some lack at times of full expression and explanation. It has been repeatedly held that the discretion of the court below in refusing a new trial will not be overruled if "there is any evidence to support the verdict." So much strength

has been allowed to the presumption of legality in the judgment below, even in the case which, as above suggested, presents the weakest position of the lower court. But how is it in the stronger case, where a further hearing is allowed to both sides? In behalf of a first grant of a new trial, the greatest deference has been uniformly shown.

In *Galliher vs. Smith et al.*, 74 *Ga.* 402, the rule is stated thus: " The court never interferes with the first grant of a new trial where the evidence is conflicting." In *Graham vs. Eastman*, 75 *Ga.* 889, it is stated thus: " This court will never interfere with the first grant of a new trial, where there is any evidence at all upon which a different verdict could be sustained. Chief Justice JACKSON, for the court, says, in *Cunningham vs. Wasson*, 73 *Ga.* 148: " The first grant of a new trial' will not be reversed, unless the verdict is demanded by the law and the facts." The language is almost identical in 74 *Ga.* 393: " The rule is well-settled in this court that the first grant of a new trial will not be disturbed, unless the evidence demands the verdict under the law." *Vide* also *Collins vs. Wilcox*, 75 *Ga.* 889. The mode of statement is different, but not weaker, in *Isbell vs. Stillwell*, 74 *Ga.* 387: " The first grant of a new trial on evidence not sufficient, in the opinion of the court below, will not be scrutinized by this court, or interfered with, unless there be manifest abuse of discretion." 40 *Ga.* 91, and 42 *Ga.* 64. In 74 *Ga.* 587, the case of *Gamble vs. The Central Railroad*, etc., we find this further modification of the rule in favor of the first new trial: " The first grant of a new trial and" [even] "the grounds of the motion will not be scrutinized closely by this court."

In *Swint, adm'r, vs. The Central Railroad et al.*, 75 *Ga.* 888, the court say: " The presiding judge being dissatisfied with the verdict, and having granted a first new trial, one among the many grounds of the motion being that the verdict was contrary to the evidence, this court will not control his discretion in so doing; nor will we closely scan any views of the law expressed by the judge in granting

the new trial, the presumption being that, on the second hearing, he will correct his own error."

Numerous quotations equally liberal towards the first allowance of a rehearing might be made. These show that although not unquestionable in this court, yet a first grant, on account of supposed conflict between verdict and evidence, appears here with the highest presumption in favor of its legality.

5, 6. But how stands the second grant? The code says: "In any case when the verdict is found contrary to evidence and the principles of justice and equity, the presiding judge may grant a new trial." Section 3713. Again it says, in section 3717: "The presiding judge may exercise a sound discretion in granting or refusing new trials, in cases where the verdicts may be decidedly and strongly against the weight of evidence, although there may appear to be some slight evidence in favor of the finding." Here, in the statute, is no limitation of the discretion conferred to the first verdict. Wisely such limitation is omitted.

In 75 *Ga.* 852, *Christian et al. vs. Westbrook et al.*, it is intimated that the "discretion" to grant or refuse extends to the second verdict. The second motion for a new hearing was denied below. The affirmance here is rested on the fact that the judge was satisfied with the verdict, and not on the ground that he could not have vacated it lawfully. In 72 *Ga.* 205, is reported the case of *Hazzard vs. The Mayor, etc. of Savannah,* where the judge had granted the first new trial. This court affirmed the judgment, saying: "There was no abuse of discretion in granting a new trial on the ground that the verdict was not supported by the evidence, the case being quite a weak one on the evidence." Upon the second hearing, the jury again found for the plaintiff, increasing the amount of the recovery seven hundred dollars. (By the way, we note that the jury in the case at bar rendered a larger verdict by eight hundred dollars than the first one.) Upon the second hearing of *Hazzard's* case, the presiding judge granted

another new trial. That judgment was reviewed in 74 *Ga.* 377. This court held that "the presiding judge did not abuse his discretion in granting a second new trial." In *Johnson vs. Renfroe & McCrary*, 73 *Ga.* 139, it is held that, "where the motion for a new trial is grounded alone on the position that the verdict is contrary to the evidence and the law, . . . the statute vests the discretion to grant or refuse a new trial, and unless that discretion be abused, this court has no legal power to interfere." This language concerning the authority conferred by the statute, is used without limitation to the first verdict. We find no case where it is adjudicated that the judge cannot grant a second new trial because the verdict is strongly and decidedly against the weight of the evidence.

The case of *Cleveland vs. The Central Railroad*, 73 *Ga.* 793, is quoted as tending in that direction. There this court refused to reverse the first grant of a new trial, deferring to the discretion of the court below. But upon the same evidence read over to the jury at the next hearing, the same verdict was rendered. The court set it aside. The Supreme Court reversed the judgment, saying: "Questions of contributory negligence are matters for the jury; and after two verdicts for the same amount, and based on the same evidence, the judge should not have interfered with the finding, there being enough evidence to justify it." Here it is plain that this court reviewed the second grant of a new trial under the light of the special facts, and with regard to the peculiar issues, and held that, in view of such evidence and the two concurring verdicts, the presumption of the legality of the judgment below was overcome, and that the court below erred in law. For, of the evidence, it is observed, not that there is some in favor of the finding, but that there is more than sufficient to support it—that there is quite enough to justify it. In the case of *Cook vs. The Western and Atlantic Railroad*, a brakeman undoubtedly was killed by the running of the train. The case first came before the court on a judgment

v-79-22.

of nonsuit. 69 *Ga.* 619. The court then held that, "negligence being peculiarly a question for the jury, and in a suit against a railroad company for a homicide of an employé, the absence of negligence on his part and its existence on the part of the company being in doubt, a nonsuit should not be granted, but the case should be submitted to the jury." From the opinion, it is evident that the Supreme Court thought the railroad company there at fault and the plaintiff faultless. For, having stated what the the court understood to be the opinion of the judge below as to the respective obligations of the plaintiff and of the defendant, it proceeds thus : " On the other hand, it is insisted that the brakeman had the right to feel assured that an inspection of this car had been made, and that it was safe ; and it being his duty to ascertain the cause of the fire seen, he went forward for that purpose, and was killed by the negligence of the company. In this opinion we concur." This court adds, " The facts were such as should have been passed on by the jury, and it should have been left to them to find," etc. The case having been tried again, and a verdict having been rendered for the plaintiff, a new trial was awarded by the presiding judge. In 72 *Ga.* 48, that ruling is reversed, and the court says in the last. paragraph of the opinion : " A new trial having been granted prior to the last grant of a new trial in this case, the discretion of the court below to make this last grant of a new trial had been exhausted on that ground." In this opinion, the court held that the question of negligence was *res adjudicata* in the former review. 69 *Ga.* above cited. But the defendant relied, for exemption from liability, on a contract made with plaintiff, its employé, waiving liability on the part of the company for negligence, which contract this court held to be void by the express terms of the act of 1876. From all which it is apparent that this court reversed the superior court on the ground that the allowance of the new trial was in conflict with the previous decision of this court in this case, and based on

an erroneous view of the law.　This was a case where the element of negligence was the controlling one and had before been ascertained by the Supreme Court to exist. Upon such issues, and in the precise facts, it was said that the discretion to grant a new trial was exhausted.　Evidently the learned judge who prepared the opinion meant that that large and almost free discretion, which is allowed to the court below in granting first new trials, could not be pleaded in such a case as was then under review　But had the Supreme Court been uncontrolled by the former adjudication in the same case, and had there not been apparent an erroneous legal effect allowed to the said contract, and had not the issue been one of negligence, and had the weight of evidence been strongly and decidedly against the death being caused by the train, it would not have been held that the mere fact of a former nonsuit, or a prior new trial, did *ipso facto* demand a reversal of the judgment.

The case of *Papot vs. The Southwestern Railroad et al.*, 74 *Ga.* 296, is one in which three new trials were granted. This court said : " The discretion of the court to have a first new trial on the evidence is rarely disturbed."　But further on it is held, as to this case : " It is an issue of fraud or no fraud—especially a jury issue,—and on conflicting testimony one verdict ought not to be hastily disturbed. Three verdicts, at least two on this particular issue, should be allowed to stand, unless facts were grossly set at defiance and ruthlessly disregarded by the juries."　It is clear from the argument that the reviewing court regarded the evidence as plainly with the verdict.

We have made this somewhat extensive, though not exhaustive, review of the rulings of this court on new trial based on the state of the evidence, because those rulings have by some been thought not altogether harmonious, and an occasional retrospect of the path of the court seems not undesirable as tending to remove misconstructions and misunderstandings.

, From all that has been said and shown, we conclude that the power of the superior courts to grant new trials, being expressly conferred by statute, as well as arising from common law principles (*vide* code, sections 3711–3718), is not limited by any absolute and invariable rule as to the number of times of its allowable exercise, but that the presumption of the legality of such grant, generally speaking, weakens upon each additional concurrent verdict; and that a third, or even a second, grant of a rehearing on the ground of the evidence being decidedly and strongly against the verdict, will be carefully reviewed to see that the discretion to grant it has been justly, wisely and prudently exercised, letting each case stand as to this question upon its peculiar issues and facts, and allowing due weight to the general considerations of the fitness of juries to find the facts, and of the necessity that there shall be some end to litigation.

7. Now, in the light of these principles, how stands the case at bar? The fundamental inquiry and dispute in this case is, did the defendant cause this conflagration? The question of negligence or of due diligence does not arise till this is settled. This first inquiry involves no peculiar subtilty, such as lurks in questions of fraud and questions of negligence. The plaintiff's theory is, that the defendant's engine cast out sparks, which ignited the cotton, from which the conflagration extended until it consumed his house. But no witness saw the fire so originate. The engine passed and moved close by the cotton. Some witnesses had known it to throw out sparks elsewhere. Fires some miles away were attributed to it. This fire began not long after the engine had passed. From these circumstances, minutely detailed, plaintiff infers that the engine must have set out the fire. Were this all the evidence, at least a very strong suspicion should attach to the engine as the probable cause of the calamity, but the defendant shows that the engine was well-constructed, and supplied with the most approved spark-arrester, under the ordinary

operation of which the escape of sparks sufficient to set out fire was improbable, and must have been of rare occurrence. The force of the plaintiff's evidence of the neighborhood of the engine to the cotton, is greatly weakened by the conflicting testimony of those in charge of the engine, concerning its positions and movements. These persons were more likely to know accurately the facts on such particular matters, than mere casual observers who had no duty, no responsibility and no training about the moving and the loading of cars, the shifting of switches, and the conduct of the engine. So the inquiry for the cause of the fire would stand, were there no evidence of a different cause.

But the defendant says that a little boy, named Amos Ware, thoughtlessly struck a match just after the train left, dropped it into the cotton, and thus caused the fire. Allen Coppedge, Frank Shockley, Charley Cooper and Will. Valentine, all swear positively that they were together, playing about on the cotton and looking at the new engine, and that Amos Ware, a little boy, was a few feet behind them; that they heard him strike a match, and on turning suddenly, saw the match burning in his hand, saw him drop it between the bales, saw the cotton blaze up, saw Amos fight the fire with his hat, and joined him in similar efforts to put it out. We have carefully scrutinized the testimony of these youths, and are constrained to say that, despite all criticism, they are remarkably harmonious. Considerable effort was made to throw discredit upon them by proving that Amos had on no shoes at the time. That was a false issue. Charley Cooper says, "I did not see the match when it was struck, but I heard it, and looked around just as he was taking it off his shoes. He had on shoes. I am positive about that." None of the others asserted his having on shoes. Two of them "thought" he struck it on his shoe, but did not see it done. He was sitting on the cotton when they turned and saw the match lighted in his hand, and it was a natural notion

that he had struck it on his shoe—as is very common—without taking pains to notice whether or not he had on shoes. The positive statement of Cooper that he did have shoes on is quite irrelevant. Will. Valentine says that he was barefooted, and that "he struck the match on a cotton-tie."

The plaintiff also shows that Amos was at Stafford's store at such a time as he claims to be inconsistent with his presence when the cotton began to burn. But that depends upon the estimate of a short period of time, not claimed to be more than a few minutes—an estimate made by witnesses, in whose minds then there seemed no occasion to keep account of time. Such opinions are of little weight in opposition to positive testimony as to visible facts.

Boot Powell, a colored drayman, saw these boys on the cotton just as he was going to dinner. Returning in a short time, he saw the cotton on fire and "the boys were coming down." William Willis "saw four or five little white boys there on the cotton. They were fighting the fire with their hats. Some of them were sitting down at first, and the fire broke out, and some one jumped up and hollered, you'd better go back and put out that fire. Some little boy ran back and began fighting it with his hat. . . . . They ran off." Easter Green saw "a little white boy trying to put the fire out with his hat—then he ran." Alice Green, living right in front of the cotton, "saw the boys on the cotton just before the fire, and [afterwards] "trying to put it out with their hats, and running away." Sam Mabry, from another point of view, saw the boys trying to put the fire out with their hats; identifies Amos Ware there, at the time; and saw them run away. Fletcher Green saw the boys there on the cotton, just before the fire, and saw them fighting it, and then run away. Amos Ware admitted being there a few minutes before the fire, but denied striking the match, or being present when the cotton took fire.

Allen Coppedge, Frank Shockley and Charley Cooper

were white.   Will. Valentine and the other six witnesses quoted were black.   Amos was a little white boy.   None of these witnesses was impeached.   A witness called to show contradictory statements made by Coppedge, while testifying to something of the sort, bore strong testimony to his credibility, and said he would believe what he would swear.   The plaintiff's theory requires the belief that the four boys all swore a wilful falsehood, and also strongly infers the same extreme estimate of the six negro witnesses; and this without any evidence of interest of them or their families.   Amos's father is suing the railroad for this conflagration, and Amos may have dreaded the responsibility of the truth.

We might enlarge this array of confirmation of the defendant's theory as to the cause of the fire.   We think the evidence that the little boy set it out is very strong.   Certainly we cannot hold that the judge abused his discretion or failed to use it wisely when, as against an inference and the denial of this one boy, he believed the mass of evidence already reviewed.

8.   This case, too, is an exciting one.   A large part of the town of Barnesville was consumed in this conflagration. The whole community and the entire county were, no doubt, uncommonly wrought up by the dreadful loss.   Many of the most influential citizens were and are suing the railroad for indemnity.   Large damages are involved in this and the kindred cases.   In view of these considerations, which the presiding judge could better appreciate than this court, we would be the more reluctant to hold it indiscreet in him to order a new hearing of so grave a matter upon such a state of evidence.

Judgment affirmed.