## CENTRAL OF GEORGIA RAILWAY CO. *v.* HARDEN.

The order overruling the motion for a new trial, fails to show that the verdict sought to be set aside was approved by the trial judge in the exercise of a sound legal discretion, but clearly, by the terms therein employed, it indicates the contrary. In the absence of such approval, the verdict can not, under the evidence, be sustained.

Argued April 8, — Decided May 14, 1901.

Action for damages.    Before Judge Clark.    City court of Forsyth.    September 1, 1900.

This action was on account of the killing of the plaintiff's mule. He alleged that the mule was fastened to a tree near the track of the defendant's railroad, and, becoming frightened by a passing train, broke loose and ran for a considerable distance along a pathway parallel to and near the track, and when it reached a public crossing over the track a passenger-train reached the crossing, running at the rate of twenty-five or thirty miles an hour, and frightened the mule, causing it to reverse its course and run down the track directly in front of the engine for about three hundred yards, when the engine struck it and caught it on the cowcatcher, from which, after it had been carried from three hundred to five hundred yards farther, it was thrown and thereby killed.    He alleged that the defendant was negligent in not complying with the statutory requirement to blow the whistle and check the speed of the train on approaching the crossing, and especially in not checking the speed and blowing the whistle while the mule was running on the track in front of the engine.    The defendant, in its plea, denied that it was negligent as alleged, and averred that the killing was due to an unavoidable accident.    There was a verdict against the defendant for the amount sued for, which was the admitted value of the mule.    A motion for a new trial was overruled, and the movant excepted.    In addition to the general grounds, the motion complained that the court erred as follows:

1. In admitting in evidence certain testimony, set out in the motion, as to the noise made by the first of the trains mentioned, over objection that this was not the train that killed the mule, and the testimony therefore could not illustrate the issue as to whether the defendant was liable.

2. In charging the jury: "If you find from the evidence that the mule killed suddenly and unexpectedly came upon the railway track at some place other than a public road crossing, and that the engineer in charge could not, by the exercise of ordinary care and diligence, after he discovered the mule, or after he could have discovered it had he exercised ordinary care and diligence either before or after it got upon the track, and if then, by the exercise of ordinary care and diligence, he could not have avoided the killing, plaintiff could not recover in that event." It is alleged that (*a*) the words "at some place other than a public road crossing" were calculated to impress the jury that the crossing referred to in the evidence was a public road crossing, when the evidence showed it was not; (*b*) these words were calculated to impress the jury with the idea that they were to determine whether the mule was struck at a public crossing, when no such issue was raised by the evidence; (*c*) this charge does not present the defense of the company, which was that the killing was an unavoidable accident; (*d*) it is the only part of the charge that undertook to present the defense of the company, and it failed to do so; and (*e*) the charge is not clear and explicit, and could not be understood by the ordinary juror.

3. In refusing to charge: "Upon proof of the killing by the agents of the company a presumption is raised against the company, but this presumption may be rebutted by evidence. The testimony of the employees of the company, in the absence of anything to discredit or contradict it, can not be arbitrarily disregarded." The movant contends that this was applicable to the case; for that the evidence of the engineer, corroborated by that of the fireman, showed that it was impossible to prevent the killing, and the only evidence on the other side was the proof of the killing and the appearance of the tracks.

*Hall & Boynton* and *R. L. Berner*, for plaintiff in error.
*Stone & Williamson*, contra.

LITTLE, J. A number of grounds are set out in the motion for a new trial. In addition to those that the verdict is contrary to law and without evidence to support it, several assignments of error are made to the rulings of the judge in admitting evidence, and to several portions of his charge to the jury. These we have carefully considered, and in our judgment no error of law was commit-

ted. The question whether the verdict is supported by the evidence in the case is one of much more difficulty. In the case of the *Georgia Southern R. Co.* v. *Sanders*, 111 *Ga.* 128, this court took occasion to say that if there is any one question settled by the general law and the interpretation of our statutes, it is that of the liability of a railroad company to respond in damages to the owner, for the killing of live-stock by the operation and running of its engines and cars; and we now repeat what was said there, that when it has been shown that an animal has been injured or killed by the running of a locomotive or train of cars, the law presumes that the company was guilty of negligence in such injury or killing, and, if nothing more appears, the owner, resting on such presumption, is entitled to recover; but that when this presumption is rebutted by the evidence, and there is no conflict in the evidence, the owner is not entitled to recover. It was clearly shown in this case that a mule belonging to the plaintiff was killed by the running and operation of a locomotive and train of cars belonging to the defendant company. If nothing more appeared, the owner would, under the presumption that such killing was the result of negligence, have been entitled to recover the proved value. But the engineer and fireman were sworn as witnesses in the case, and testified, in effect, that the mule came suddenly on the track in front of the engine, and despite all the efforts which were made (and that all possible efforts were made) the locomotive struck the mule and it was killed. In reply to this, witnesses were introduced who testified as to tracks running down the road, apparently in front of the advancing train. It was, however, not made conclusively to appear that these tracks were made by the mule which was killed; and even if it could be so determined, the conclusion does not follow that the animal was seen or could have been seen by the engineer while so running. At best, this evidence is exceedingly unsatisfactory in opposition to that of the witnesses who were at the time on the locomotive, and who testified as to the discovery of the animal on the track in their front. We are not prepared to say that this evidence of tracks was not in some degree in conflict with the evidence of the engineer and fireman; but if so at all, it was barely such as would authorize a jury to conclude that the animal ran for some distance in front of the approaching train, and that its presence should have been discovered.

The jury having returned a verdict for the plaintiff, the trial judge, in passing on a motion for a new trial, made an order in the following language: "The motion for new trial in the within case is hereby reluctantly overruled, September 1, 1900." We are somewhat at a loss as to the interpretation this judgment should receive, but, after much consideration, have concluded, that it can not be construed as a judicial approval of the verdict which was rendered. The definition of "reluctant," given by Mr. Webster, is "striving against; opposed in desire; unwilling; disinclined;" and by the Standard Dictionary, "disinclined to yield to some demand or requirement; unwilling," etc. It is but fair to our brother of the trial bench to say that in our opinion the true interpretation of the judgment which he rendered is, that, as the jury who were charged with the determination of the facts settled them by their verdict, while he could not approve the finding, he allowed it to stand because the jury had so found. It is the settled doctrine of *this* court that where a jury has passed upon a case, and there was evidence to support their finding, and that finding has been approved by the trial judge, in the absence of any error of law on the part of the trial judge this court will not set aside the verdict, although satisfied that the preponderance of the evidence was against the finding made. But the same rule does not apply to the judge of the trial court in passing on a motion for a new trial. This court is one of limited jurisdiction, and its constitutional authority is to correct errors which were committed in those courts from which a writ of error lies; and in an adherence to the rule above referred to, an important consideration is that the trial judge has approved the verdict which was rendered; and the fact that he has approved it, and that there is some evidence to sustain the finding, renders this court unable to say that, as a matter of law, the verdict was wrong, and that the trial judge erred in overruling the motion to set it aside. As an original proposition the power given to trial judges to set aside verdicts rendered in their courts makes the exercise of this power a matter of judicial discretion. The primary object of submitting questions of fact to a jury for determination is the ascertainment of the truth as to those facts about which the parties are at issue, and the judges presiding in trial courts have direct supervision of the verdicts rendered therein; and while we would not for a moment be understood as saying that they should capriciously set aside

the findings of fact made by a jury, or that they ought without good cause to set aside the verdict when the evidence is conflicting, we do unhesitatingly say that they should in every instance set aside a verdict and grant a new trial to prevent the working of an injustice, where it is apparent that such would be the result. Mr. Blackstone in the third book of his Commentaries, 383, in referring to the origin of the grant of new trials says: "Very early in the reign of Charles II, new trials were granted upon *affidavits*; and the former strictness of the courts of law, in respect of new trials, having driven many parties into courts of equity to be relieved from oppressive verdicts, they are now more liberal in granting them: the maxim at present adopted being, this, that (in all cases of moment) where justice is not done upon one trial, the injured party is entitled to another."

In the second volume of Graham & Waterman on New Trials, 39, the author says: "That the exercise of this power is sometimes absolutely necessary for the purposes of justice it needs but little argument to demonstrate. If the verdict of a jury be, in all cases, conclusive, there is no remedy for a fraudulent and wilful disregard of the evidence; and a trial by jury, instead of being the safest and most expeditious mode of determining questions of fact, would soon lose that place in the public confidence to which it is now so justly entitled." In the same volume on page 41 the author further says: "In the hurry of a trial the ablest judge may mistake the law, and misdirect the jury. . . The jury are to give their opinion instanter, that is, before they separate, eat or drink; and under these circumstances the most intelligent and the best intentioned men may bring in a verdict which they themselves, upon cool deliberation, would wish to reverse. Granting a new trial, under proper regulations, cures all those inconveniences, and at the same time preserves entire and renders perfect that most excellent method of decision which is the glory of the English law." Lord Mansfield in the case of Bright *v.* Eynon, 1 Burrow, 390, among other things said: "Trials by jury in civil causes could not subsist now, without a power somewhere to grant new trials. . . Most general verdicts include legal consequences as well as propositions of fact. In drawing these consequences, the jury may mistake, and infer directly contrary to law. . . If unjust verdicts, obtained under these and a thousand like circumstances, were to be

conclusive forever, the determination of civil property in this method of trial would be very precarious and unsatisfactory. It is absolutely necessary to justice that there should, upon many occasions be opportunities of reconsidering the cause by a new trial." In the same volume of Graham & Waterman's work to which we have above referred, p. 47, the author declares that there is one rule of universal application and controlling efficacy. It is, that where substantial justice has been done no new trial will be granted. The discretion of courts consists in deciding this fundamental question. The author there further says: "The judge, then, should never deny a motion of this kind, unless he is satisfied that the merits of the case have been fully and fairly tested and determined. If he has a reasonable doubt on the subject, he should decide in favor of the application." In his preface to the same work the author declares that the distinguishing characteristic of this mode of practice (that is, granting new trials) is the proper exercise of the legal discretion of the judge to best subserve the purposes of substantial justice, and that, in this, it evidently approaches the province of equity, acting upon a rule of universal application neither to grant nor refuse a new trial against the conscience of the case; that this salutary principle runs through all the cases, and every rule will be found either more intimately or remotely connected with it and controlled by it. Many of our own adjudications are in consonance with the view which we have above gathered from distinguished jurists as well as common-law writers.

In the case of *Taylor* v. *Sutton*, 15 *Ga*. 103, which was a bill in equity filed to obtain relief against a judgment at law, Judge Lumpkin, in delivering the opinion, said: "The first instance to be met with in any book of legal authority, of a new trial, with reference to the merits of the case on the evidence, is in the year 1665. . . For many years afterwards, new trials were grudgingly granted at common law; and for that very reason, courts of equity were liberal in granting relief against common-law judgments, and the court of chancery was induced to take to itself the decision of legal questions, in many cases, which now appear to have been beyond the legitimate bounds of its jurisdiction — for it is now universally admitted that trials by jury, in civil cases, could now [not] subsist without a power, residing somewhere, to grant new trials. Misconduct. mistake, surprise, and prejudice, and the other grounds of failure,

which are now provided against by this expedient, must have operated in ancient times equally as now.   But now the thing is changed, and it is the every-day practice to grant new trials at law, and upon the most equitable principles."   In the case of *Hill* v. *Vanduzer*, 37 *Ga.* 294, Harris, J., in delivering the opinion of this court, when referring to the action of the judge of the superior court in granting a new trial for an error committed by him, said: "This prompt and manly correction of error is highly commendable.   If the errors occurring in the rapid dispatch of business in the superior courts were corrected, as in this case, more frequently than they are (and our system contemplates such constant correction by them), very much of the labor of the profession would be diminished thereby, expense to parties litigant curtailed, and this tribunal relieved from reviewing and reversing many cases which should be corrected below."   We are not to be understood as in any manner detracting from that wise fundamental rule, which is the foundation of the system of trial by jury, that questions of fact are not to be determined by the court but by the jury.   While fully recognizing and appreciating the inestimable value of this rule, it is not conceded that trial judges have no power of supervision over verdicts when rendered.   Under our system a judge may not express or intimate an opinion as to what has or has not been proved, but after the rendition of a verdict, in considering a motion for a new trial, the law imposes upon the trial judge the exercise of a sound legal discretion in granting or refusing another hearing.   In the exercise of this discretion two cardinal principles must be kept in view.   The first is, that it is the province of the jury to determine contested questions of fact.   The second is, that, notwithstanding this power and duty of the jury, if the verdict rendered is not in accordance with the law and the evidence in the case, it should be set aside.   A court is a place where justice is judicially administered; and if a verdict is wrong and oppressive, if it fails to do justice to either party, it should not be allowed to stand.   The last appeal that a citizen can make for the preservation of his liberty or property is to the courts of the country, and if by a judgment rendered therein he is improperly deprived of either one or the other, the conclusion is inevitable that the system which authorizes it is wrong.

We know of no better rule for the guidance of a trial judge in passing on a motion for a new trial than that which may be deduced

from an opinion delivered by Judge Story, of whom Lumpkin, J., said: "It is always refreshing in questions of law to find shelter under his name. It is the shadow of a great rock in a weary land." In the case of Alsop *v.* Commercial Insurance Co., 1 Sumner, 451, this eminent jurist said: "In considering questions of this nature, I confess myself among those judges who are very reluctant to intermeddle with the verdicts of juries in mere matters of fact. There was a time when courts were disposed to go an extravagant length on this subject, and to set aside the verdict of the jury, merely because, in the opinion of the court, the weight of evidence was on the other side. This was, indeed, substituting the court for the jury in the trial of the credibility of the testimony, and the weight of evidence. For one, I am not disposed to proceed far upon this dangerous ground; and, in matters of fact, I hold it to be my duty to abstain from interposing [interfering] with the verdict of a jury, unless the verdict is clearly against the undoubted general current of the evidence, so that the court can clearly see that they have acted under some mistake, or from some improper motive, or bias, or feeling." Our constitution in paragraph 6 of section 4 of article 6 expressly confers upon the superior and city courts of this State power to grant new trials on legal grounds. This power is repeated as to convictions in criminal cases in paragraph 1, section 2 of the bill of rights. And by the Civil Code, § 5474, it is declared: "The several superior courts of this State shall have power to correct errors and grant new trials in any case or collateral issue depending in any of said courts, in such manner and under such rules and regulations as they may establish according to law and the usages and customs of courts." Clearly, therefore, if in the exercise of the power thus given to a trial judge in this State to supervise a verdict rendered on the facts, he, in the conscientious discharge of this power, finds that the verdict is clearly against the undoubted general current of the evidence, so that he is enabled to say that the jury has acted under some mistake, or from some improper motive, or because of bias or feeling, the verdict should be set aside in the interest of justice. As has been intimated above, the rule which prevails in this court as to setting aside verdicts and ordering new trials is not the rule which ought to be observed by the judge of the court in which the verdict was rendered. Here we have not only the verdict of the jury to consider, but in case of a refusal of a motion for

a new trial we have also evidence of the approval of the verdict by the judge who tried the case. Therefore, with this approval, if there is any evidence to sustain the verdict, we are not able to say that the trial judge erred in refusing to set it aside. Under a motion for a new trial a different question is presented to the trial judge, and the fact that there was some evidence on which the verdict could be sustained is not of itself a sufficient cause for him to overrule the motion. As to him it is declared by the Civil Code, § 5482: " The presiding judge may exercise a sound discretion in granting or refusing new trials in cases where the verdict may be decidedly and strongly against the weight of the evidence, although there may appear to be some slight evidence in favor of the finding." And in the Civil Code, § 5483, it is declared: " In all applications for a new trial, on other grounds not provided for in this Code, the presiding judge must exercise a sound legal discretion in granting or refusing the same according to the provisions of the common law and practice of the courts." Some of these provisions of the common law and of the practice of the courts we have endeavored to give above.

It must not be understood that in our discussion of the power and right of a trial judge to grant a new trial it is our purpose in any way to criticise the action of our brother of the trial bench who presided in the case brought before us for review. On the contrary, having affirmed all of the rulings of law made by him in the case, we are only led to review the terms of his order overruling the motion for a new trial because of the conviction that he adopted the erroneous view which, we are led to believe, some of the judges of other trial courts in this State have entertained : that is, that if there was any evidence, however slight, to support the verdict, a new trial should not be granted. Such is not and never has been the rule where the common law prevails, and it would be in direct contravention of our statutes on the subject. We infer that the trial judge entertained this view from the expression, contained in his order, that he " reluctantly " overruled the motion; and so interpreting it, we are constrained to think that the verdict which was rendered did not meet his approval, although he overruled the motion. Some members of this court reach this conclusion because the evidence to support the verdict was so exceedingly weak that its sufficiency to warrant the jury's finding is to be gravely

doubted. This must have been apparent to the trial judge, and the conclusion, therefore, seems irresistible that in a case of this character reluctance to uphold the verdict means disapproval of it. This case is, in principle, controlled by that of *Rogers* v. *State*, 101 *Ga.* 561, where it was ruled: "This court will not allow a conviction of a crime to stand, when the record discloses strong reasons for believing that the judge below was not himself fully satisfied with the finding of the jury." In the opinion in that case Mr. Justice Cobb said: "Where it appears from the record that the evidence is of the character named [weak, unsatisfactory, and doubtful], and that the trial judge must have been of the same opinion, and where it further appears that he is not himself entirely satisfied with the verdict, no course is left open to us except to send the case back for a rehearing before another jury, that the trial judge may satisfy himself as to the propriety and justice of the finding." It is our opinion that without the approval by the trial judge of the verdict which was rendered in the present case it should not be allowed to stand; for undoubtedly the great preponderance of the evidence is against it. The judgment of the court below is       *Reversed. All the Justices concurring.*