22939. SIMS v. THE STATE.

ARGUED MAY 10, 1965—DECIDED JULY 14, 1965—
REHEARING DENIED JULY 26, 1965.

*Howard Moore, Jr., Wm. H. Alexander,* for plaintiff in error.
*Dewey Hayes, Solicitor General, Eugene Cook, Attorney General, Rubye G. Jackson, Assistant Attorney General,* contra.

DUCKWORTH, Chief Justice. Isaac Sims, Jr., a Negro, was convicted of rape by force in the Superior Court of Charlton County and was sentenced by that court to death by electrocution. (Sims' first conviction for this offense was reversed by this court in *Sims v. Balkcom*, 220 Ga. 7 (136 SE2d 766)). Sims' amended motion for new trial having been overruled, he brings his case to this court for review. Error is assigned on the court's orders overruling the challenge to the array, the motion to suppress illegally obtained evidence, the motion for change of venue, the pleas in abatement, the motion to quash the indictment, and the amended motion for new trial.

■ (a) The first, second and fourth grounds of the challenge to the array and the sole ground to the plea in abatement challenging the composition of the grand jury is that the system for compiling jury lists in Charlton County, Ga., operated to systematically and arbitrarily exclude and include Negroes for jury service. It was shown that the jury lists were compiled from tax digests which were maintained on the basis of race. However, one of the jury commissioners testified that race was not a factor in the compilation of jury lists. No evidence was introduced to contradict his testimony. It was shown that there was one Negro on the grand jury which indicted defendant and at least five Negroes on the jury list from which the jury who tried defendant was made up. The burden of proof was on the defendant to make out a prima facie case of invidious discrimination under the Fourteenth Amendment. Swain v. Alabama, 380 U.S. 202 (85 SC 824, 13 LE2d 759), decided March 1965. All the defendant showed here, as was done in the Swain case, which involved allegations of discrimination in the selection of jurors, is that the percentage of Negroes on the jury list did not reflect the percentage of Negroes in the county. This is not sufficient to show invidious discrimination. As was said in the Swain case, p. 208: "A defendant in a criminal case is not constitutionally entitled to demand a proportionate number of his race on the jury which tries him nor on the venire or jury roll from which petit jurors are drawn."

Under the evidence in this case, the defendant did not make

out a prima facie case of invidious discrimination, and the court did not err in overruling the challenge to the array or the plea in abatement on this ground.

It is also urged that the court erred in excluding certain jury lists which were offered as evidence in connection with the claims of discrimination against Negro jurors. Jury lists for a ten year period were offered in evidence. All were excluded except for the lists of the jurors from which the juries who indicted and convicted were taken. As mentioned above, there was no showing of discrimination on the juries which indicted and convicted the defendant. This being true, we are of the opinion that the court properly excluded the jury lists for prior years. They would not be relevant in the face of a showing that no discrimination existed in the composition of the present juries.

(b) The third ground of the challenge to the array is that qualified Negroes have never served as jury commissioners in Charlton County. It was stipulated by the parties that no Negroes had served in the last eight years. This contention was decided adversely to defendant in *Avery v. State,* 209 Ga. 116, 122 (70 SE2d 716), reversed on other grounds, 345 U.S. 559 (73 SC 891, 97 LE 1244), and that decision is controlling here.

(c) The fourth ground of the challenge to the array is that the lists from which the traverse jurors were drawn was revised annually instead of biennially or triennially as required by *Code Ann.* § 59-106 (Ga. L. 1955, p. 247). There is no merit in this contention. The provisions of the Code are directory only, and the failure to comply strictly with them does not violate any rights guaranteed to defendant. *Haden v. State,* 176 Ga. 304 (1) (168 SE 272); *Daugherty v. State,* 59 Ga. App. 898 (2 SE2d 519).

(d) The ground in the plea in abatement challenging the legal composition of the grand jury and the ground in the plea challenging the legal composition of the petit jury on the ground that the jurors, grand and petit, were taken by the jury commissioners from a list of taxpayers in the tax digests of Charlton County which are kept on the basis of race were properly overruled.

These grounds of the pleas are without merit for two reasons.

First, *Code* § 92-6307 requires county tax receivers to make out separately on the tax digests the names of colored and white taxpayers. No attack is made on this statute. Secondly, the evidence introduced on the hearing of these pleas shows without dispute that the jury commissioners, in making up the grand and petit jury lists, did so as provided by the laws, and jurors were selected without regard to race or where their names appeared on the tax digests.

(e) The final ground of the challenge to the array is that four Negroes, because of their race, were systematically included on the jury list and that the State prosecutor exercised four of his peremptory challenges to strike the Negroes. No showing was made that such procedure was customarily followed in order to exclude Negroes from jury service. The decision of the United States Supreme Court in Swain v. Alabama, 380 U.S. 202, 221, supra, is decisive on this point. It was there held: "We cannot hold that the striking of Negroes in a particular case is a denial of equal protection of the laws. In the quest for an impartial and qualified jury, Negro and white, Protestant and Catholic, are alike subject to being challenged without cause. . . The presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court. The presumption is not overcome and the prosecutor therefore subjected to examination by allegations that in the case at hand all Negroes were removed from the jury or that they were removed because they were Negroes." The final ground of the challenge to the array is not meritorious.

The court did not err in overruling the plea in abatement or the challenge to the array.

■ A motion for change of venue on the ground that defendant could not secure a fair and impartial trial in Charlton County was overruled by the court. This was not error. None of the evidence introduced by the defendant tended to show that an impartial jury could not be obtained in Charlton County. The ruling of a trial judge on a motion for change of venue will not be disturbed by this court unless an abuse of discretion is shown. *Rawlins v. State*, 124 Ga. 31 (2) (52 SE 1); *Coleman*

*v. State*, 141 Ga. 737 (1) (82 SE 227). Clearly, the trial judge does not abuse his discretion in overruling the motion when no evidence is introduced to support the allegations of the motion.

■ Defendant's plea in abatement, which challenged the constitutionality of *Code Ann.* § 26-1302 (Ga. L. 1960, p. 266) on three grounds was overruled. That Code section provides: "The crime of rape shall be punished by death, unless the jury recommends mercy, in which event punishment shall be imprisonment for life: Provided, however, the jury in all cases may fix the punishment by imprisonment and labor in the penitentiary for not less than one (1) year nor more than twenty (20) years." In the plea it was asserted: (1) the statute does not set out any standards to guide the jury in imposing punishment; (2) the statute imposes cruel and unusual punishment, and (3) the statute is unequally applied to defendant "because of his race and color and is a facet and aspect of the pattern and practice of sentencing Negroes to death for rape in furtherance of a racial caste system which finds state sanction in the deeply rooted history, public policy, and attitudes which are prevalent within the State of Georgia and particularly in Charlton County, Georgia."

The first two grounds of this plea were decided adversely to defendant on the former appearance of the case in this court, *Sims v. Balkcom*, 220 Ga. 7, supra. That decision is controlling on these grounds and requires no elaboration here.

In the third ground of the plea defendant asserted that *Code Ann.* § 26-1302 had been applied to deny persons of the Negro race equal protection of the laws in violation of the Federal and Georgia Constitutions in that since 1930 the State of Georgia has executed 58 Negroes and 3 white persons for the crime of rape. The same contention was raised by the defendant in his habeas corpus proceeding following his first conviction and decided adversely to him (*Sims v. Balkcom*, 220 Ga. 7, supra) and is controlling here.

The court did not err in overruling the plea in abatement.

■ A motion was made to quash the indictment on the ground that there were two indictments in the case and that the return of the second indictment was improper. It is argued that since

defendant's first conviction was reversed by this court in *Sims v. Balkcom,* 220 Ga. 7, supra, on retrial the case should have been tried on the original indictment and that the return of, and trial on, a second indictment places defendant in double jeopardy. This contention is lacking in merit. In *Irwin v. State,* 117 Ga. 706 (45 SE 48) it was held: "In a criminal proceeding the pendency of a former indictment for the same offense is no ground for a plea in abatement or in bar. . . Where several indictments for the same offense are pending against the same person, it is immaterial upon which he is first tried." See also *Pride v. State,* 125 Ga. 750, 751 (54 SE 688) where it was said: "The defendant having sought the opportunity of going into jeopardy the second time for the same offense, it is competent to put him in jeopardy again, but there is no constitutional or statutory requirement that he should in the second instance be tried upon the same indictment." The court did not err in overruling the motion to quash the indictment.

■ (a) The general grounds of the amended motion for new trial are not meritorious. The defendant was convicted of rape by force. The victim testified that the defendant forced her car off the road, dragged her into the woods, pulled her clothes off, and raped her. She also testified that the defendant kept choking her and threatened to kill her if she screamed. Her testimony was fully corroborated by other witnesses. The mother of the victim testified that she saw her daughter about one hour after the attack took place and that the daughter "could hardly walk . . . and her face was streaming blood and it was all swollen and red, and she was just bruised and dirty. Her clothes were in a terrible condition." Dr. Joseph M. Jackson testified that he examined the victim shortly after the attack and that she was "very emotionally upset and almost in a state of shock . . . her face had blood stains, had bruise marks, and there was clotted blood about, particularly, her nose, and the eyes were bloodshot. There were marks on her neck, chest, and breast, and there were marks on her lower abdomen, and her female parts showed evidence of fresh trauma." The doctor also testified that there had been a penetration of her private parts. Defendant's confession was also introduced in evidence.

But even without this confession, the above mentioned evidence was sufficient to support the verdict. *Smith v. State,* 91 Ga. 10 (16 SE 378); *Holmes v. State,* 194 Ga. 849 (7) (22 SE2d 808).

(b) The first ground of the amended motion asserts that the court erred in admitting in evidence the signed written statement of the defendant in which he confessed the commission of the charged offense and in refusing to strike the testimony of Sheriff Lee relating to the taking of the statement in that the facts and circumstances under which defendant's statement was made were insufficient to support the requirements of due process under the 14th Amendment of the United States Constitution.

The undisputed evidence as to the time and manner in which the statement was taken is as follows: the offense was committed about 10 a.m. on April 13, 1963. About 3 p.m. of the same day the defendant was arrested by Sergeant Sims of the State Patrol. Under instructions of Sergeant Sikes of Charlton County he was taken to the office of Dr. Jackson, and then to the jail in Waycross where he was placed in the custody of Ware County Sheriff Lee. About 6:30 p.m. of the same day, one Dudley Jones, a Deputy Sheriff of Ware County, saw the defendant whom Jones had known for 12 years or more. No one else was present—Jones asked him what "he was doing up there." Sims replied that he "got in trouble with a white woman in Folkston, Georgia"; "that he raped a white woman in Folkston." Jones asked him whether he wanted to make a statement to that effect to the sheriff. Sims replied that he did. Jones took him to the sheriff's office where his statement was taken, reduced to writing, and signed at about 10:30 p.m. on April 13, 1963.

Sheriff Lee testified that before the defendant made any statement he advised him that he was entitled to an attorney and that the defendant said he did not want an attorney; he advised Sims that any statement he made could be used against him. The sheriff further testified that no threats or promises of hope of benefit or reward were made to induce Sims to make a statement. His statement was reduced to writing and signed by Sims in the presence of the sheriff, the Chief of the Ware County Police, Jones, the deputy sheriff of the county, and B. C. Worley, a constable.

On April 15, 1963, after Sims had been transferred to the Charlton County jail at Folkston, F. F. Cornelious of the Bureau of Investigation read to the defendant his written statement of April 13 and he asked Sims if it was true. Sims replied, "Yes sir, that is right."

The foregoing recital of facts as to the circumstances under which the statement was made were not denied by the defendant in his examination by his counsel.

The related facts made a prima facie showing that the statement was freely and voluntarily made and admissible in evidence. *Code* § 38-411; *Williams v. State,* 208 Ga. 704 (2) (69 SE2d 199). However, counsel for the defendant contends that under the ruling in Escobedo v. Illinois, 378 U.S. 478, supra, the confession was inadmissible because it was obtained in the course of interrogation by the officers, when the defendant did not have the benefit of counsel, and under the Fourteenth Amendment to the Federal Constitution he was entitled to counsel at this stage of the investigation. In that case the accused while being investigated by police officers requested the services of a lawyer, which request was denied. His lawyer was denied the privilege of seeing or consulting with the accused during the interrogation. It was there held: "We hold, therefore, that where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the States by the Fourteenth Amendment,' Gideon v. Wainwright, 372 U.S., at 342, and that no statement elicited by the police during the interrogation may be used against him at a criminal trial." Escobedo v. Illinois, p. 490, supra.

The factual situation in Escobedo v. Illinois is entirely different from the instant case. Here, the defendant, while not

being interrogated by an officer as to any offense, voluntarily made an incriminating admission after he had been warned that it would be used against him and after he had been advised that he was entitled to the services of a lawyer and the defendant said he did not want one. The record discloses that the defendant was 29 years old with a third or fourth grade education. As far as the evidence discloses, he was a man of average intelligence and capable of understanding the consequences of his acts. While the decision of the majority in the Escobedo case may be as stated by Justice White in his dissenting opinion, p. 495, viz.: "At the very least the Court holds that once the accused becomes a suspect and, presumably, is arrested, any admission made to the police thereafter is inadmissible in evidence unless the accused has waived his right to counsel," the ruling of the majority does not give to the accused the *absolute right* to the services of a lawyer during the investigative stage of the proceedings against him regardless of his express statement that he does not want a lawyer.

(c) In ground 3 of the amended motion for new trial error is assigned because the court, after giving appropriate instructions to the jury, left to them the question of whether or not the defendant's confession was voluntary, and instructed the jury to disregard the confession in the event they should determine that it was not voluntary. It is urged that this procedure violates rights guaranteed to defendant under the Fourth, Fifth, Sixth and Fourteenth Amendments of the Federal Constitution. Counsel insists that the decision of Jackson v. Denno, 378 U.S. 368 (84 SC 1774, 12 LE2d 908) (which was a Federal habeas corpus proceeding) is controlling on this ground of complaint. Did we think that the Jackson case applied to this case we would unhesitatingly follow it, despite our firm conviction that it is illogical, impracticable and utterly unsound. But when we read that opinion we note a total absence of any consideration therein of the Georgia statute, *Code* § 38-420, which provides that a conviction cannot rest upon a confession alone, but the confession must be corroborated; or of the Georgia Statute, *Code* § 38-411, requiring as an indispensable foundation to the introduction of an alleged confession a showing that it

was freely and voluntarily made and that it was not induced by another by the slightest fear of punishment nor the remotest hope of reward; or of Georgia Law investing the trial judge with unquestionable power to review the case after conviction, and to set the verdict aside if he is not satisfied with it. *Code* §§ 6-1608; 70-101; 70-102; 70-202; 70-206; 70-208; 110-703; *Rogers v. State,* 101 Ga. 561 (28 SE 978); *Central of Ga. R. Co. v. Harden,* 113 Ga. 453 (38 SE 949); *Taylor v. Central R. &c. Co.,* 79 Ga. 330 (5 SE 114); *Mills v. State,* 188 Ga. 616 (4 SE2d 453); *Deen v. Baxley State Bank,* 192 Ga. 300 (15 SE2d 194). Indeed, the trial judge must approve the verdict, and if he does not, the State cannot review his action in setting aside the conviction. *Code Ann.* § 6-901 (Ga. L. 1957, pp. 224, 232); *State v. Jones,* 7 Ga. 422; *State v. Lavinia,* 25 Ga. 311; *State v. Steele,* 112 Ga. 39 (37 SE 174); *Eaves v. State,* 113 Ga. 749 (39 SE 318). We believe the Supreme Court will consider these facts and agree that the Jackson decision does not apply here.

The Jackson case approves the Massachusetts procedure whereby the judge first renders his judgment as to the voluntariness of the confession, and then submits the same question to the jury. As pointed out by the dissent of Justices Harlan, Clark and Stewart, this procedure is obviously more hurtful to the accused since it would tend to prejudice the jury by having the judge's judgment on the same question before them while making their verdict, whereas the Georgia rule presents the question to the jury without giving them the judgment of the judge. It is inconceivable that any Justice could fail to see this vital point. But taking the Jackson opinion at what it says is its basis, it merely condemns having the trial of voluntariness joined in the determination of guilt because of a possibility of prejudicing the jury, but when the judge acts after conviction as in Georgia, there is no jury to be prejudiced. The Massachusetts rule requires that the judge who does not pass upon the guilt or innocence make the determination of voluntariness, which rule is approved in Jackson. Therefore, the crux of the matter as seen by that court is satisfied by Georgia law which empowers the trial judge, after the jury has returned a verdict of guilty, to set that verdict aside if he alone is not

satisfied with it. To say the judge will be prejudiced is to say even Justices will be prejudiced and, hence, no constitutional trial or review can be had. This means that although initially in passing upon admissibility he heard evidence prima facie showing the voluntariness and allowed the introduction of the confession, but after hearing conflicting evidence on that issue, the judge, who the Supreme Court does not say will be prejudiced, can and we must assume will, set the verdict aside if he believes an illegal confession was considered by the jury. He thus has power to reverse the jury on the question of voluntariness. It would be difficult to find a more complete satisfaction of the requirement of Jackson than Georgia provides. And the unsound implications of Jackson should not be extended one iota to make it cover cases not explicitly covered by it such as this case where there was no evidence to make any issue of voluntariness. Without an issue there is nothing to try.

We are aware of the strange speculation as to how jurors might violate their oaths in the opinion in Jackson, all of which was pure imagination without a scintilla of fact or law to support it. In thus indicting our jury system, that court unjustly reflects upon those officials participating in the trial least subject to criticism. They, the jurors, unlike the judge and other officers, including Supreme Court Justices, do not ask to serve, but are serving only because they obey the court summons to render valuable services to their country, and this without adequate pay. Imperfect though it be, the American jury system is the fairest and purest means the ingenuity of man has found for resolving issues of fact in court trials. On its record the jury deserves the highest praise of all men and particularly Justices, rather than unfounded speculation as to possibilities of their betrayal of trust and violating their oaths.

As pointed out above we think an affirmance meets the demands of Jackson. But that decision is so shocking in condemning procedures that have been practiced for centuries with the approval of both State and Federal courts, until we think every judge has a duty to speak out loudly against it. Mr. Justice Black, with more service on that court than any other member, could never be called a reactionary, yet he could not approve

the opinion of the majority and said so very plainly in these words: "Though able to cite as support for its holding no prior cases suggesting that the New York practice is so unfair to defendants that it must be held unconstitutional, the court does refer to commentators who have made the suggestion. None of these commentators appears to have gathered factual data to support his thesis, nor does it appear that their arguments are at all rooted in the actual trial of criminal cases." Here is the heart of the matter, "actual trial." Mr. Justice Clark, correctly in our opinion, points out that since the New York procedure had not been attacked in the trial court it was not proper for the Supreme Court to consider it since the defendant's counsel —who had 50 years' experience in practicing law and as a judge —did not object to the statements being put in evidence. In taking that position he stands in the company of thousands of experienced lawyers and judges throughout America.

Then the opinion of Justice Harlan, whom all Americans respect as an outstanding, experienced lawyer, which is concurred in by Justices Clark and Stewart both of whom have had wide experience in the practice of law, specifically enumerated insuperable legal barriers to the majority opinion when he pointed out that only seven years ago that same court in Stein v. New York, 346 U.S. 156 (73 SC 1077, 97 LE 1522), directly and explicitly held the same procedure law valid, and then only a year ago that court in Spano v. New York, 360 U.S. 315 (79 SC 1202, 3 LE2d 1265), reaffirmed its validity. How can the majority expect the rest of us to respect their decisions when they themselves show no respect whatever for them? Justice Harlan shows that that court has repeatedly (as in Opper v. United States, 348 U.S. 84, 95, 75 SC 158, 99 LE 101), rejected *speculation* that a jury would disregard the instructions of the court, yet when the speculation which is no more than imagination of the majority that a jury might disregard instructions is lifted from their opinion there is nothing left.

Mr. Justice Brennan, speaking at the Conference of Chief Justices in New York in 1964, approved and encouraged criticism of court decisions when based upon reason and done with due respect. That duty we are trying to perform now, and we

hope he will consider our criticism. It seems to us that when the majority in total disregard for the useless piecemeal trials it forces upon trial courts, with the resulting delays and over-burdens of courts, and contrary to procedure' laws that have endured for centuries with judicial approval as to validity twice within seven years by that court, and now by the smallest majority possible—a single Justice—imposes upon the trial courts of America the personal notions of only five out of the nine Justices of that court, a clear case of refusing to exercise proper judicial self-restraint is made. One would have to claim infallibility who would thus set the mere opinion of the five—void of support by law or precedent—against the foregoing enumerated overwhelming supports for the law they strike down. Justices should remember that they have no monopoly on either wisdom or integrity, and before they indict the reliability of jurors, they should think of the sacred challenge that the guilt-less cast the first stone.

We want to do justice and protect the accused in all his rights and we know Georgia law concerning confessions does this, but we simply are finding it frustrating and exceedingly difficult to do this when confronted constantly with a new and strange rule with no basis of law but established by a majority of one of the Supreme Court. Unless that court becomes will-ing to abide by its own decisions, and respect State laws, we will soon find State courts unable longer to function. If State courts are to perform effectively their duty of administering the criminal laws which protect life, liberty and property, the heavy hand of the Supreme Court in this field must in some way be removed from the throats of State courts.

We yield to no living men in our appreciation of and highest respect for the Supreme Court as a vital part of our. Govern-ment and its proper supremacy over all .courts, including this one. But if those occupying it will not uphold State procedure law that is constitutional and follow their own decisions sus-taining those laws, chaos will reign in the lower courts of Am-erica. We hope the present Justices will, after more mature consideration, overrule Jackson v. Denno, 378 U.S. 368, supra, and allow State courts to try cases according to law rather

than the personal notions of just barely more than half of the Justices. We have always done as we think all Justices should do even in cases of doubtful soundness of a law or decision where there has been long reliance thereon and innocent people, including the State, had acted thereon and would suffer irreparable loss if the law is stricken down—applied the rule of stare decisis and upheld it. For it is better that laws of doubtful soundness be certain than that all law stand in imminent danger of being declared void because it is not written as some Justices would prefer. Legislatures alone determine the wisdom of laws, and courts, despite their belief that the law is unwise, nevertheless are bound by the Constitution to confine their considerations of such laws to their constitutionality alone. Courts possess neither the facilities, the experience, nor the wisdom of legislators to qualify them to pass upon the wisdom of laws.

We affirm the instant case in the belief that we are not violating Jackson v. Denno, 378 U.S. 368, supra, and in the firm conviction that such a judgment will rest upon sound, tested and just law and is indispensable to law enforcement. We regret to say that, although acting in the utmost of good faith, but apparently unacquainted with the realities and practicalities of orderly procedure in the trial of cases, the majority of our Supreme Court by striking down established rules of procedure in trials are shaking the foundations of orderly judicial trials which can only be followed by chaos in the trial courts of America. The admirable concern of the Supreme Court for the protection of all individual right we fervently hope will not extend to destruction of the superior rights of the public to be protected against rapists, robbers, kidnappers and murderers. To do so would betray the highest trust placed in our court. One should never be allowed to destroy many. We make this plea to the Supreme Court upon the assumption that they, like the members of this court, seek knowledge and advice, and respect our right, yea, our duty to speak frankly and respectfully when we believe an alarming injustice is being unintentionally forced upon American courts by their notions of what ought to be rather than what is established by others worthy and qualified to provide.

(d) In ground 4 of the motion for new trial error is assigned on the following charge: "And then, Gentlemen, in the event you find the defendant guilty you may ·fix the punishment at not less than so many years, which could not be less than one, and not more than so many years, which could not be more than twenty. For illustration, and for illustration only, you could fix his punishment at ten years, or five years, or twenty years, or at one year, or seven years, just any figure between one and twenty years." It is urged that the charge "led the jury to believe that it could only fix the term of imprisonment at any figure between one and twenty years, where in fact and law the jury could fix a minimum and maximum term." The provision for a sentence of not less than one year and not more than 20 years as provided in *Code Ann.* § 26-1302 applies only where a recommendation of mercy is made by the jury after a finding of guilty. The jury in this case made no recommendation. Whether or not the charge was error need not be determined in view of the verdict. *Golden v. State,* 213 Ga. 481 (1) (99 SE2d 882); *Russell v. State,* 196 Ga. 275 (4) (26 SE2d 528).

■ The same issues are raised in the motion to suppress illegally obtained evidence as were raised in the first ground of the amended motion for new trial. The ruling made on the latter motion in Division 5 (b) of this opinion is controlling here, and for the reasons there stated, the court did not err in overruling the motion to suppress illegally obtained evidence.

*Judgment affirmed. All the Justices concur, except Almand, J., who dissents from the ruling in Division 5 (c) and from the judgment of affirmance, and Cook, J., disqualified. Quillian, J., concurs specially.*

ALMAND, Justice, dissenting. I dissent only from the ruling of the majority in Division 5(c) of the opinion and the corresponding Division 5(c) in the headnote and the judgment of affirmance. As pointed out in this dissent, I would affirm on condition of the outcome of future proceedings in the case.

In Jackson v. Denno, 378 U.S. 368 (84 SC 1774, 12 LE2d 908) the Supreme Court of the United States held that the procedural method of passing upon the voluntariness or unvoluntariness of

confessions in criminal cases, as practiced and sanctioned by the State of New York, violated the constitutional rights of the defendant. The procedural methods in such cases are the same in the State of Georgia as in the State of New York. The trial court in this case followed the procedure long approved by this court and approved by the United States Supreme Court in Stein v. New York, 346 U.S. 156 (73 SC 1077, 97 LE 1522), until it was overruled on June 22, 1964, by Jackson v. Denno, supra. The instant case was tried subsequently to Jackson v. Denno, supra, and was controlled by the ruling there made.

I would reverse the trial court solely upon the ground that the procedure followed in the instant case for determining the voluntariness of defendant's confession violates the ruling of the United States Supreme Court in Jackson v. Denno, supra, with direction that a jury be impaneled as required in a capital felony case for the sole purpose of determining whether the confession was or was not voluntarily given, and if the court finds it was voluntarily given, it be admitted in evidence and submit the question, under proper instructions, to the jury. If the jury finds that it was voluntary, the judgment denying a new trial will stand affirmed. But if either the trial judge or the jury finds that it was not voluntarily given, the judgment denying a new trial will stand reversed, and a new trial is ordered on the guilt or innocence of the defendant without the confession being admissible in evidence. *Code* § 6-1610. Compare *Wilson v. State*, 173 Ga. 275 (5e) (160 SE 319).