## SIMS *v.* GEORGIA.

No. 251.   Argued December 6–7, 1966.—Decided January 23, 1967.

*Jack Greenberg* argued the cause for petitioner.   With him on the brief were *James M. Nabrit III, Anthony G. Amsterdam* and *Howard Moore, Jr.*

*Dewey Hayes,* Solicitor General of Georgia, and *E. Freeman Leverett,* Deputy Assistant Attorney General, argued the cause for respondent.   With them on the brief was *Arthur K. Bolton,* Attorney General.

MR. JUSTICE CLARK delivered the opinion of the Court.

Petitioner, a Negro, has been convicted of raping a white woman and has been given the death penalty.   He raises five federal questions[1] for consideration by this

[1] The five questions are:

"1. Whether petitioner's Fourteenth Amendment rights were violated by a conviction and sentence to death obtained on the basis of a confession made under inherently coercive circumstances within the doctrine of *Fikes* v. *Alabama,* 352 U. S. 191.

"2. Whether petitioner's Fourteenth Amendment rights were violated by the failure of the Georgia courts to afford a fair and reliable procedure for determining the voluntariness of his alleged coerced

Court, among which is that his Fourteenth Amendment rights to a fair trial were violated by the state trial judge's failure to determine the voluntariness of his alleged confession prior to its admission into evidence before the jury, as required by the rule in *Jackson* v. *Denno,* 378 U. S. 368 (1964). The Supreme Court of Georgia ruled that *Jackson* was not applicable and affirmed petitioner's conviction, *Sims* v. *State,* 221 Ga. 190, 144 S. E. 2d 103. We granted certiorari limited to the five questions, 384 U. S. 998. We have determined that petitioner's case is controlled by *Jackson, supra,* and therefore we do not reach any of the other issues raised.

I.

The record indicates that on April 13, 1963, a 29-year-old white woman was driving home alone in her automobile when petitioner drove up behind her in his car,

confession in disregard of the principle of *Jackson* v. *Denno,* 378 U. S. 368.

"3. Whether petitioner's Fourteenth Amendment right to counsel as declared in *Escobedo* v. *Illinois,* 378 U. S. 478, was violated by the use of his confession obtained during police interrogation in the absence of counsel, or whether petitioner's right to counsel was effectively waived.

"4. Is a conviction constitutional where:

"(a) local practice pursuant to state statute requires racially segregated tax books and county jurors are selected from such books;

"(b) the number of Negroes chosen is only 5% of the jurors but they comprise about 20% of the taxpayers; and

"(c) a Negro criminal defendant's offer to prove a practice of arbitrary and systematic Negro inclusion or exclusion based on jury lists of the prior ten years is disallowed?

"5. Where a Negro defendant sentenced to death in Georgia for the rape of a white woman offers to prove that nineteen times as many Negroes as whites have been executed for rape in Georgia in an effort to show that racial discrimination violating the equal protection clause of the Fourteenth Amendment produced such a result, may this offer of proof be disallowed?"

forced her off the road into a ditch, took the woman from her car into nearby woods and forcibly raped her. When he returned to his car, he could not start the engine so he left the scene on foot. Some four hours later he was apprehended by some Negro workers who had been alerted to be on the watch for him. He told these Negroes that he had attacked a white woman. They then turned petitioner over to their employer who delivered him to two state patrolmen. He was then taken to the office of a Doctor Jackson who had previously examined the victim. Petitioner's clothing was removed in order to test it for blood stains. Petitioner testified that while he was in Doctor Jackson's office he was knocked down, kicked over the right eye and pulled around the floor by his private parts. He was taken to a hospital owned by Doctor Jackson, which was adjacent to his office, where four stitches were taken in his forehead. Thereafter the patrolmen took petitioner to Waycross, Georgia, some 30 miles distant, where he was placed in the county jail. During that evening, he saw a deputy sheriff whom he had known for some 13 years and who was on duty on the same floor of the jail where petitioner was incarcerated. He agreed to make a statement and was taken to an interview room where, in the presence of the sheriff, the deputy sheriff and two police officers, he signed a written confession. Two days later he was arraigned.

Prior to trial petitioner filed a motion to suppress the confession as being the result of coercion. A hearing was held before the court out of the presence of the jury. The sheriff and the deputy testified to the circumstances surrounding the taking and signing of the confession. Petitioner testified as to the abuse he had received while in Doctor Jackson's office. He testified that he "felt pretty rough for about two or three weeks

[after the incident], more on my private than I did on my face" and that he "was paining a right smart." There was no contradictory testimony taken. The court denied the motion to suppress without opinion or findings and the confession was admitted into evidence at petitioner's trial.

At the trial, Doctor Jackson was a witness for the State. On cross-examination he denied that he had knocked petitioner down while the latter was in his office, or that he had kicked him in the forehead but made no mention of the other abuse about which petitioner testified. The doctor stated that petitioner was not abused in his presence but he refused to say whether the patrolmen present abused petitioner as he was not in the office at all times while the petitioner was there with the patrolmen. In this state of the record petitioner's testimony in this regard was left uncontradicted.

## II.

There is no actual ruling or finding in the record showing that the trial judge determined the voluntariness of the confession. Although he admitted it into evidence, it appears that he was only following a long-standing state practice that the "State having made out a prima facie case that the alleged confession was freely and voluntarily made, it was a question for the jury to determine on conflicting evidence whether the alleged confession was freely and voluntarily made." *Downs* v. *State*, 208 Ga. 619, 621, 68 S. E. 2d 568, 570. Defense counsel called the court's attention to the *Jackson* v. *Denno* ruling of this Court and stated that he did not "know whether the procedure being followed at this time satisfies the rule decided by the Supreme Court on June 22nd, 1964, that the Court must make judicial determination whether the statement was made voluntarily before it is read to the

jury." In his charge to the jury the judge directed that it was for the jury to determine whether the confession was actually made or not and to disregard it if not made freely and voluntarily.

### III.

On appeal to the Supreme Court of Georgia, it was held proper for the trial judge to have left the question of the voluntariness of the confession to the jurors with instructions that they should disregard it if they should determine that it was not, in fact, voluntarily made. Indeed, that court specifically found that the "related facts made a prima facie showing that the statement was freely and voluntarily made and admissible in evidence." 221 Ga., at 198, 144 S. E. 2d, at 110. It therefore seems clear from the opinion of the highest court of Georgia that it has applied its own rule rather than having followed the rule set down in *Jackson* for the procedural determination of the voluntariness of a confession. This conclusion is buttressed by the fact that the court below also found that the "Georgia rule presents the question to the jury without giving them the judgment of the judge." *Id.*, at 200, 144 S. E. 2d, at 111. This is the exact procedural device which is proscribed by the rule in *Jackson*.

### IV.

The Supreme Court of Georgia reasoned, however, that *Jackson* was not applicable because of the safeguards that Georgia's laws erect around the use of confessions. It pointed out that under Georgia law, before a confession may be admitted it must be corroborated and a showing made that it was freely and voluntarily given. In addition, the trial judge has the power to set aside the verdict of the jury and grant a new trial if, in his opinion, the jury was in error. The court concluded that the rule in *Jackson* is satisfied by Georgia law and

that "It would be difficult to find a more complete satisfaction of the requirement of Jackson than Georgia provides." *Id.*, at 201, 144 S. E. 2d, at 111. The court also felt that if this not be true, in any event, "the unsound implications of Jackson should not be extended one iota to make it cover cases not explicitly covered by it such as this case where there was no evidence to make any issue of voluntariness. Without an issue there is nothing to try." *Ibid.* We cannot agree. There was a definite, clear-cut issue here. Petitioner testified that Doctor Jackson physically abused him while he was in his office and that he was suffering from that abuse when he made the statement, thereby rendering such confession involuntary and the result of coercion. The doctor admitted that he saw petitioner on the floor of his office; that he helped him disrobe and that he knew that petitioner required hospital treatment because of the laceration over his eye but he denied that petitioner was actually abused in his presence. He was unable to state, however, that the state patrolmen did not commit the alleged offenses against petitioner's person because he was not in the room during the entire time in which the petitioner and the patrolmen were there. In fact, the doctor was quite evasive in his testimony and none of the officers present during the incident were produced as witnesses. Petitioner's claim of mistreatment, therefore, went uncontradicted as to the officers and was in conflict with the testimony of the physician. Under *Jackson*, it was for the trial judge to first decide these conflicts and discrepancies. This he failed to do.

Furthermore, Georgia's highest court, in finding that its rule satisfied the requirements of *Jackson,* overlooked the fact that the same safeguards offered by the Georgia practice were present in the procedures of New York in *Jackson* and were rejected by this Court. A constitutional rule was laid down in that case that a jury is

not to hear a confession unless and until the trial judge has determined that it was freely and voluntarily given. The rule allows the jury, if it so chooses, to give absolutely no weight to the confession in determining the guilt or innocence of the defendant but it is not for the jury to make the primary determination of voluntariness. Although the judge need not make formal findings of fact or write an opinion, his conclusion that the confession is voluntary must appear from the record with unmistakable clarity. Here there has been absolutely no ruling on that issue and it is therefore impossible to know whether the judge thought the confession voluntary or if the jury considered it as such in its determination of guilt. *Jackson,* having been decided June 22, 1964, was binding on the courts of Georgia in this case, it having been tried October 7, 1964. Such rule is, as we have said, a constitutional rule binding upon the States and, under the Supremacy Clause of Article VI of the Constitution, it must be obeyed.

The judgment is, therefore, reversed and cause is remanded for a hearing as provided by *Jackson* v. *Denno, supra,* at 393–396.[2]

*It is so ordered.*

MR. JUSTICE BLACK dissents for the reasons stated in his dissent in *Jackson* v. *Denno,* 378 U. S., at 401.

---

[2] This disposition is in keeping with the teaching of *Jackson, supra,* that "a determination of . . . voluntariness" should occur initially "in the state courts in accordance with valid state procedures . . . before this Court considers the case on direct review or a petition for habeas corpus is filed in a Federal District Court." 378 U. S., at 393.