The State of Ohio, Appellee, *v.* Utsler et al., Appellants.

(No. 1022—Decided February 18, 1970.)

*Mr. George J. Demis,* prosecuting attorney, for appellee.

*Mr. Joseph Tripodi,* for appellants.

Putman, J. Terry Lee Utsler, Hubert Clay Strader and Daniel Boone Morgan were jointly indicted, tried and convicted by a jury in Tuscarawas County in one two-count indictment which charged them with a November 23, 1968, burning of a dwelling house of others (Section 2907.02, Revised Code) and nearby barn (Section 2907.03, Revised Code).

The third defendant, Daniel Boone Morgan, was later acquitted by the court, notwithstanding the verdict.

Sentence was imposed on Strader and Utsler who appeal, assigning four errors:

Assignment of Error No. 1.

The court erred in admitting the statement of codefendant Hubert Strader, made out of the hearing of the other codefendants.

ASSIGNMENT OF ERROR No. 2.

The court erred in allowing into evidence the statement obtained from Hubert Strader, a high-grade mental defective, who signed a waiver of his constitutional rights.

ASSIGNMENT OF ERROR No. 3.

The court erred in not directing a verdict in favor of the appellant Hubert Strader.

ASSIGNMENT OF ERROR No. 4.

The trial court erred in overruling defendants' objection to a jury view, where the conditions at the time of trial were materially changed from the time of the alleged crime.

## I.

We first consider the admission of Strader's statement against Utsler.

The state's first witness was a State Arson Investigator who testified as to certain oral custodial statements made to him at the County Jail by the defendant Strader after the arrest of the three men.

The defendant Utsler was not present when those statements were made by Strader. Strader's statements incriminated Utsler and were indispensable to Utsler's conviction.

The conviction of Utsler must be reversed because of *Bruton* v. *United States* (1968), 391 U. S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620, the first paragraph of the L. Ed. headnotes reading:

"An accused's right of cross-examination secured by the confrontation clause of the Sixth Amendment is violated at his joint trial with a codefendant who does not testify by the admission of the codefendant's confession inculpating the accused, notwithstanding jury instructions that the codefendant's confession must be disregarded in determining the accused's guilt or innocence."

Since the Sixth Amendment to the United States Constitution is made applicable to the States by the Fourteenth Amendment, that was prejudicial error.

Therefore, the first assignment of error is sustained and the conviction of Utsler is reversed and the cause re-

manded with respect to him for a new trial and/or further proceedings according to law.

## II.

We now consider the use of Strader's statements against him.

The defendant Strader was convicted partly upon his own oral inculpatory answers to custodial interrogation. This raises three separate questions:

1. Did the police follow the regulations prescribed for them by the United States Supreme Court in *Miranda* v. *Arizona* (1966), 384 U. S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A. L. R. 3d 974?

2. Were Strader's answers voluntary?

3. Did the trial court follow the procedural rules imposed upon it for determining the voluntariness question by the Unted States Supreme Court in *Jackson* v. *Denno, Warden* (1964), 378 U. S. 368, 12 L. Ed. 2d 908, 84 S. Ct. 1774, 1 A. L. R. 3d 1205?

It is interesting that these questions reflect a judicial process inquiring not whether the accused did wrong but whether the police and the courts did wrong.

## III.

Because the procedural question of *Jackson* v. *Denno* includes the substantive rule of *Miranda* v. *Arizona* as one part of it, we discuss the broader procedural question first.

The defendant Strader was convicted partly upon his own oral inculpatory answers to custodial interrogation.

The United States Supreme Court, in *Jackson* v. *Denno,* 378 U. S. 368, has imposed upon state courts a procedural rule that the trial court must first make the determination whether such statements meet constitutional standards. Later, *Miranda* v. *Arizona,* 384 U. S. 436, changed the test of constitutional admissibility, but not the procedural requirements of *Jackson* v. *Denno.*

Now both the issues of (1) the actual voluntariness of the statement and (2) whether there was compliance with "Miranda" must be heard together and determined judicially in a *Jackson* v. *Denno* type hearing before the jury

is permitted to consider the statements of the accused resulting from custodial interrogation. *State* v. *Perry* (1968), 14 Ohio St. 2d 256; *State* v. *Wigglesworth* (1969), 18 Ohio St. 2d 171.

Lack of compliance with *Miranda* results in per se inadmissibility, even though the statement be truly voluntary in the pre-*Miranda* sense.

Apart from the question whether the hearing and determination are required to be out of the hearing of the jury, the United States Supreme Court, in *Sims* v. *Georgia* (1967), 385 U. S. 538, 17 L. Ed. 2d 593, 87 S. Ct. 639, said: "* * * A constitutional rule was laid down in that case [*Jackson* v. *Denno*] that a jury is not to hear a confession unless and until the trial judge has determined that it was freely and voluntarily given. The rule allows the jury, if it so chooses, to give absolutely no weight to the confession in determining the guilt or innocence of the defendant but it is not for the jury to make the primary determination of voluntariness. Although the judge need not make formal findings of fact or write an opinion, his conclusion that the confession is voluntary must appear from the record with unmistakable clarity. Here there has been absolutely no ruling on that issue and it is therefore impossible to know whether the judge thought the confession voluntary or if the jury considered it as such in its determination of guilt. * * * Such [*Jackson*] rule is, as we have said, a constitutional rule binding upon the States and, under the Supremacy Clause of Article VI of the Constitution, it must be obeyed." (385 U. S. at 543-44.)

In *Pinto* v. *Pierce* (1967), 389 U. S. 31, 19 L. Ed. 2d 31, 88 S. Ct. 192, it was held not to be error to hold the hearing in the jury's presence where the court ruled the confession voluntary and the defendant made no objection to the procedure.

In the case at bar, the holding of the hearing upon the issue of the admissibility of the statements in the presence of the jury did not result from any error on the part of the trial court. This was all the defense counsel's own deliberate doing. He "threw the fat in the fire" so to

speak. Without notice as to the nature of the testimony to the court or presecuting attorney, he interrupted the direct examination of the state's first witness and secured the court's permission to put on a witness out of order. In the presence of the jury, he called a psychologist and put her testimony into evidence, presumably as part of the defense case in chief, out of order.

The court, in *Jackson* v. *Denno*, 378 U. S. 368, said, at page 391:

"* * * These procedures must, therefore, be fully adequate to insure a reliable and clear-cut determination of the voluntariness of the confession, including the resolution of the disputed facts upon which the voluntariness issue may depend. * * *"

In this case, as in *Jackson* v. *Denno*, the trial court was aware that defendant's counsel "was questioning the circumstances under which the defendant was being interrogated," and particularly his mental capacity to comprehend language and legal concepts.

The defendant, out of order, offered testimony of a psychologist that defendant lacked the mental capacity to make an intelligent or understanding or voluntary waiver. The testimony consisted of tests and personal observations of the psychologist in an interview with the accused.

In this case, one of the disputed underlying facts upon which the question of voluntariness depended was that of defendant's mental capacity.

It is the thrust of *Jackson* v. *Denno*, 378 U. S. 368, that these factual disputes must be aired before the trial court in an evidentiary hearing and resolved by the trial court. Having decided the underlying factual disputes independent of the jury, the trial court has the further duty to declare into the record its conclusion or findings upon the legal issue of the voluntariness of the inculpatory statement.

Is there a failure of the record to demonstrate "a reliable and clear-cut determination of the voluntariness of the confession, including the resolution of disputed facts upon which the voluntariness issue may depend," as enun-

ciated by the United States Supreme Court in *Jackson* v. *Denno,* 378 U. S. 368?

We do not undertake to expand upon or enlarge *Jackson* v. *Denno,* but simply limit our consideration of its applicability to this case alone.

The circumstances which complicate our task are:

1. No evidentiary hearing apart from the jury.

2. No express finding by the trial court upon the mental condition of the accused, Strader, as a primary fact.

3. No express declaration by the trial court that the "Miranda waiver" by the accused, Strader, was knowingly, understandingly and voluntarily made.

4. No express declaration by the trial court that he found the inculpatory answers by the accused, Strader, to the custodial interrogation were voluntarily given.

5. The submission to the jury of the inculpatory answers of Strader with instructions that they find upon the issue of whether they were "voluntary," and whether there was compliance with *Miranda* v. *Arizona,* 384 U. S. 436.

The Supreme Court of Ohio has said that those issues should be determined by the court and not thereafter submitted to the jury, but that if they are first determined by the judge the later submission to the jury of the same issues is error only against the state of Ohio and is not prejudicial to the defendant. *State* v. *Perry* (1968), 14 Ohio St. 2d 256; *State* v. *Wigglesworth* (1969), 18 Ohio St. 2d 171.

We have pointed out that since the decision in *Miranda* v. *Arizona,* 384 U. S. 436, it is now necessary to include in that "*Jackson* v. *Denno* judicial hearing" a determination of the "Miranda" issues.

Therefore, it would appear that now the judicial conclusions required by *Miranda* appear with "unmistakable clarity" (*Sims* v. *Georgia,* 385 U. S. 538) from the record.

For this reason, we turn to a consideration of *Miranda* v. *Arizona,* 384 U. S. 436.

### IV.

Still considering the use of Strader's inculpatory

answers against him, we turn to the first question stated in part II of this opinion relating to *Miranda* v. *Arizona.*

There (384 U. S. at 475, 478), the United States Supreme Court said:

"\* \* \* Since the State is responsible for establishing the isolated circumstances under which the interrogation takes place and has the only means of making available corroborated evidence of warnings given during incommunicado interrogation, the burden is rightly on its shoulders.

"\* \* \*

" '\* \* \* The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.'

"\* \* \*

"\* \* \* But unless and until such warnings *and waiver* are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him." (Emphasis added.)

We attempt to be precise in our analysis of the issues involved in applying *Miranda* to our record, and to do so we make the observation that the psychologist's evidence strikes at the record at four separate levels:

1. Did the accused understand his position of peril, suspected of arson and in danger of imprisonment for a long time?

2. Did he understand what his legal rights were in this position?

3. Did he have the mental ability to avoid giving up these legal rights?

4. Did he have the mental ability under all the circumstances to avoid answering the questions? *Haley* v. *Ohio*, 332 U. S. 596, 92 L. Ed. 224, 68 S. Ct. 302.

First, the claim of lack of intelligence or of mental deficiency bears upon the issue whether the accused understood his suspect status, his position of peril, that what he said would be used to imprison him, his legal right to the presence of and advice of free counsel and his absolute right to remain silent, which understanding is a pre-

condition of his ability voluntarily and intentionally to give them up.

One cannot intentionally surrender what he does not know he has.

Secondly, the evidence as to his mental status bears upon the question whether he lacked the mental strength to avoid intentionally giving up these rights.

Thirdly, the possible effect of his alleged mental deficiency combined with the coercion inherent in the jailhouse confinement bear upon his ability to resist answering the questions (assuming, *arguendo*, that he was understandingly and intelligently willing to proceed with a conversation with a known arson investigator without a lawyer's advice and without a lawyer present, knowing he didn't have to, knowing and understanding that one would be appointed free for him if he couldn't afford one before the interrogation proceeded, and knowing and understanding he was suspected of arson which was a felony for which he could be imprisoned, and that what he said could or would be used in evidence against him on that charge resulting in that punishment).

In this case a written document purporting to be a waiver of the *Miranda* v. *Arizona* rights (Fifth and Sixth Amendments) was introduced into evidence by the state.

Apart from the question of the completeness of the recitals of this document to enunicate the "Miranda warnings," is the second question—the adequacy of those written portions of the document to set forth an express waiver thereof.

We mention that because frequently it is erroneously assumed that the delivery of the warning alone is sufficient. In fact it is only a first step along the state's burdensome road toward demonstrating a knowing, understanding and intelligent waiver of the rights set forth in the warning document. ,

Thirdly, and separately from the questions of sufficiency of the text of the document used to evidence the waiver, are the factual questions of whether the accused read and understood it intelligently, and, fourthly, is the

issue whether, if he did, his act in signing it was voluntary and whether the whole transaction was a voluntary giving up of legal rights he knew he had and understood.

We make no finding as to the defendant's mental condition at any time and no finding respecting the voluntariness of either the claimed *Miranda* waiver or the alleged inculpatory answers.

This is not our task, and we have not addressed ourselves to it.

We recite the details of the defense claim as to Strader's mental condition reflected from *Miranda* v. *Arizona*, 384 U. S. 436, to make clear the scope of the judicial inquiry imposed on the state courts by *Jackson* v. *Denno*, 378 U. S. 368.

This is made important in this case because of the way the defendant led the trial court to hear the evidence of the psychologist in the presence of the jury and then "moved to strike" Strader's statements at the close of this evidence, when all that had been aired was pre-*Miranda* "voluntariness."

The motion was peculiarly inappropriate because no statements of Strader were yet in evidence.

Although the ruling was clearly correct, it was not accompanied by any express or "unmistakably clear" finding of facts or conclusions of law relating to *Jackson* v. *Denno*, 378 U. S. 368, or *Miranda* v. *Arizona*, 384 U. S. 436.

In particular, there was no express finding upon the primary fact of Strader's mental condition or that his answers to the subsequent custodial interrogation were voluntary.

In fact no ruling upon the voluntariness of the answers to custodial interrogation was possible at that point because no evidence was yet before the court to show such questions and answers.

At the close of the defendant's "out of order" psychologist's testimony, which the defense had thrust upon the jury, the defense renewed its motion to strike the statements of Strader on the specific ground of lack of mental competence. No *Miranda* compliance evidence was in yet

because the defendant had interrupted proceedings and prevented the state from showing either the inculpatory answers or *Miranda* compliance.

The trial court overruled the objection then before it on the evidence then before it.

When the testimony showing a *Miranda* waiver came in later, there was no objection to any of it by the defense and no claim of lack of *Miranda* compliance. In fact, the waiver document itself was received without defense objection as "mutual Exhibit A" having been previously marked defendant's Exhibit "B."

Consistent with his position before the trial court, defendant assigns no "*Miranda*" or "*Jackson* v. *Denno*" error. In fact, neither case is cited in his brief.

The fatal flaw requiring reversal is that this series of events adequately informed the trial court and the prosecuting attorney of the factual claim respecting Strader's mental condition.

It presents the reviewing court with consideration of the entire record in the light of *Jackson* v. *Denno*, 378 U. S. 368, and *Miranda* v. *Arizona*, 384 U. S. 436.

On this record, the use of Strader's inculpatory answers to custodial interrogation was prejudicially erroneous.

This is so because the mental condition of the accused, Strader, was called to the attention of the trial court (*Jackson* v. *Denno*, 378 U. S. 368), and the record fails to show with "unmistakable clarity" (*Sims* v. *Georgia*, 385 U. S. 538) the judicial determination, first as to the primary fact of his mental competence; secondly, as to the pre-*Miranda* voluntariness of his inculpatory answers; and, thirdly, as to their post-*Miranda* admissibility, *i. e.*, compliance with *Miranda*.

### V.

The experience shown by this record demonstrates the awkwardness of holding "*Jackson* v. *Denno* type" hearings after a jury is impaneled and sworn.

Therefore, it is ordered that, when and if the defendant Strader is found able to stand trial pursuant to completion

of the Section 2945.37 *et seq.*, Revised Code, proceedings hereinafter ordered, the trial court hold a pre-trial hearing, as on defendant's motion to suppress, and determine the issues relating to the constitutional admissibility of evidence of Strader's custodial interrogation.

## VI.

It appears from the particular facts shown in this record that the trial court would have been authorized, upon hearing the defense counsel's representations relative to the incompetence and irresponsibility of the accused, to have made, *sua sponte,* an immediate inquiry of counsel whether he was questioning his client's ability effectively to co-operate in his defense and proceeded accordingly.

We find that now the claim of lack of mental capacity has been so clearly asserted as to require the trial court to proceed with a determination of the present mental condition of Strader under Section 2945.37 *et seq.*, Revised Code, and it is so ordered. *Evans* v. *State* (1930), 123 Ohio St. 132.

## VII.

Strader claims that the court erred in not directing a verdict of acquittal. The defendant, through his counsel, urges vigorously that this court give the strongest possible construction to the evidence of the psychologist called by the defense to give testimony as to the defendant's intelligence and mental capacity or lack thereof.

In this connection, he contends that such favorable view of the maximum inferences to be drawn therefrom leads to the conclusion that the defendant utterly lacked the mental capacity to form the specific malicious intent to commit the crimes charged and, secondly, to know, understand and comprehend the legal concepts essential to know, and, hence, voluntarily waive, his legal rights under *Miranda* v. *Arizona*, 384 U. S. 436.

The stark inconsistency of such position is that if such conclusions were warranted or even suspected from that evidence it became the duty of defendant's counsel upon first learning of such condition to call to the attention of the trial court, under Section 2945.37 *et seq.*, Revised Code,

that the defendant's alleged lack of capacity to know, comprehend and understand raised serious questions as to his ability "to understand and appreciate the nature of the charge against him, to comprehend his situation, and whether he is mentally capable of furnishing his counsel the facts essential to the presentation of a proper defense." *State, ex rel. Townsend,* v. *Bushong* (1946), 146 Ohio St. 271.

Defense counsel elected to "spring" such evidence for the first time after the accused was in jeopardy, the jury having been sworn.

After an experienced and respected trial judge, in an effort to give every benefit, courtesy and accommodation to the defense, permitted the psychologist to be called by the defense out of order, during the state's case in chief, and during the testimony of the State Fire Inspector, who was undertaking to testify as to the statements of the accused, then only was the nature of the psychological testimony revealed to the court.

In fact, the record shows no notice to the court or the prosecuting attorney as to the identity of the witness or the nature of her evidence until she revealed it in her actual testimony of her two-hour psychological interview tests and her conclusions based thereon.

In spite of this substantial tactical and forensic advantage, the jury clearly resolved these factual issues against the defendant.

The third assignment of error, that the court erred in not directing a verdict in favor of the defendant Hubert Strader, is overruled.

## VIII.

The fourth assignment of error, relating to the view, is overruled.

The grounds for the objection made in this court were never called to the attention of the trial court. In fact, the ground urged below was that "the only evidence is circumstantial and he wants to make the people see how bad the fire was so circumstances will convict three innocent men."

Material change of the scene from the time of the crime was never hinted to the court before the view. There can be no error respecting a ground never urged. *State* v. *Glaros* (1960), 170 Ohio St. 471, paragraph one of the syllabus.

Both convictions are reversed, and the causes are remanded for further proceedings according to law, including, but not limited to, new trials.

*Judgments reversed.*

VAN NOSTRAN, P. J., concurs.

RUTHERFORD, J., concurring. I concur in the findings of prejudicial error, the judgments of reversal and remand rendered in the case of each defendant, and in the syllabus. I also concur in the opinion written as applicable to Terry Lee Utsler and in the opinion written as applicable to Hubert Clay Strader, insofar as the latter opinion finds error prejudicial to Strader related to noncompliance with the provisions of Section 2945.37 *et seq.*, Revised Code, also as to noncompliance with the requirements of the United States Supreme Court cases cited, relative to admissibility of pretrial admissions and confessions.

I do not concur in the order of this court that *Jackson* v. *Denno*, 378 U. S. 368, must be complied with by the holding of a pretrial hearing, as on a defendant's motion to suppress, when no motion to suppress has been filed prior to trial. The time for holding such hearing out of the presence of the jury, for the purpose of determining the question of admissibility of the pretrial admissions of confessions, should be left discretionary with the trial court, the only limitation being that the hearing be held and determination of admissibility be made prior to admission of the statements or confession into evidence.