Rudy GONZALES, Petitioner,

v.

Dr. George J. BETO, Director, Texas Department of Corrections, Respondent.

Civ. A. No. 5–673.

United States District Court,
N. D. Texas,
Lubbock Division.

Aug. 3, 1970.

Michael D. Worley, Lubbock, Tex., for petitioner.

Crawford C. Martin, Atty. Gen. of Texas, Allo B. Crow, Asst. Atty. Gen., Austin, Tex., for respondent.

## MEMORANDUM OPINION AND ORDER

WOODWARD, District Judge.

Petitioner, Rudy Gonzales, filed his application for writ of habeas corpus in this Court on September 22, 1969. Show Cause Order was issued and Respondent's answer was filed October 13, 1969. After considering the pleadings, the Court determined that an evidentiary hearing should be held and, by order filed October 29, 1969, set the time of the hearing at 10:00 a. m. on February 9, 1970.

On February 9, 1970, the Court received evidence from both the Petitioner

and Respondent. During the hearing, it became apparent that there was need for further evidence, and consequently the Court adjourned until additional witnesses could be secured. On February 18, 1970, more testimony was received and then both parties closed after presenting oral arguments. Subsequently, briefs were submitted and the Court took the application under consideration.

In his application, Petitioner asserts that he was deprived of his right to an impartial and unbiased jury as required by the holding of the Supreme Court in Turner v. State of Louisiana, 379 U. S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965), because of the continual and intimate contact of the sheriff, acting as bailiff, with the jury during the trial. Petitioner is in the custody of Respondent pursuant to his conviction and sentence in 1961 in the 106th Judicial District Court of Dawson County, Texas, in Cause No. 1988. The District Court denied Petitioner's application as did the Court of Criminal Appeals. After exhausting state remedies, Petitioner pursued his application in this Court.

In considering the application, this Court thoroughly reviewed the entire record in Cause No. 1988, including the transcript of all testimony admitted in the trial. From a reading of the record, it appeared that Petitioner was convicted on the basis of a confession allegedly made by him and admitted into evidence before the jury. Since the voluntariness of the confession was challenged at the time of trial, the trial court was required to make, in a separate hearing, a fair and reasonable determination of the voluntariness of the confession, separate and apart from the truth or falsity of the confession. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). The *Jackson* decision is retroactive. Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). However, an examination of the entire record in Cause No. 1988 did not indicate "with unmistakable clarity" that the trial judge made "a reliable and clear-cut determi-

nation of voluntariness of the confession, including a resolution of the disputed facts upon which voluntariness may depend." Jackson v. Denno, *supra*, and Sims v. State of Georgia, 385 U. S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593 (1967).

Although, in his application, Petitioner did not assert the denial of a constitutional right, under the holding in Jackson v. Denno, *supra*, the record of trial before the Court squarely raised the issue. Yet, because the issue was not presented to the State Courts, this Court was of the opinion that it would be inappropriate to consider the problem. Accordingly, by order of this Court filed March 12, 1970, Petitioner was granted leave to file an application for writ of habeas corpus in the 106th Judicial District Court in Dawson County, Texas, to assert a denial of constitutional rights based upon Jackson v. Denno, *supra*, and any other ground that might be applicable. In light of this order, the Court held in abeyance, pending the outcome of state deliberations, any determination on the questions presented by Petitioner under Turner v. State of Louisiana, *supra*.

### Issue Presented Under Jackson v. Denno

On April 28, 1970, the 106th Judicial District Court held a hearing on Petitioner's application asserting a denial of constitutional rights based upon Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). After the hearing, the District Court filed an order dated May 5, 1970, which found that Petitioner, Rudy Gonzales, made the confession introduced into evidence in Cause No. 1988 "freely and voluntarily, without threats, improper influence or promise, without persuasion or compulsion or mistreatment * * *." Under the circumstances, the State Court could properly hold an evidentiary hearing on the issue of voluntariness, even though the confession was admitted in evidence in a trial that was conducted in 1961. See Smith v. State of Texas, 395 F.2d 958 (5th Cir. 1968). In Jackson v. Denno,

*supra*, 378 U.S. at 395–396, 84 S.Ct. at 1791, for example, the Supreme Court wrote: "[W]e cannot say that the Constitution requires a new trial if in a soundly conducted collateral proceeding, the confession which was admitted at the trial is fairly determined to be voluntary." Such a procedure would seem especially appropriate here, since District Judge Truett Smith, who presided over the trial in Cause No. 1988, also presided over the evidentiary collateral hearing on Petitioner's present application and personally made the factual determination which is before this Court on review.

█ The Court of Criminal Appeals affirmed the decision by Judge Smith on June 16, 1970, and now this Court must decide if the factual determination made by the State Court is fairly supported by the record. This Court first recognizes that the order of the 106th Judicial District Court, written after a hearing on the merits of the factual issue, is entitled to a presumption of validity and correctness. See Title 28, United States Code, Section 2254(d). Further, after examining the written order and transcript of the hearing, this Court is of the opinion that:

(1) The merits of the factual dispute were resolved in the State Court hearing;

(2) The factfinding procedure employed by the State Court was adequate to afford a full and fair hearing;

(3) The material facts were adequately developed at the State Court hearing;

(4) The State Court had jurisdiction of the subject matter and the person of the Petitioner in the State Court proceeding;

(5) The Petitioner was represented in the State Court by adequate and competent counsel;

(6) The Petitioner received a full, fair, and adequate hearing in the State Court proceeding;

(7) The Petitioner was in all things afforded due process of law in the State Court proceeding; and

(8) The factual determination and holding of the State Court is fairly supported by the record and the applicable law.

█ The evidence from the statement of facts reveals that Petitioner was arrested in Howard County, Texas, on a warrant issued out of Dawson County in connection with a robbery and murder at a service station in Lamesa. Mr. Mayfield, the sheriff of Dawson County at that time, testified at the evidentiary hearing in State Court that Petitioner was returned to Dawson County by Mr. West, who was an investigator for the District Attorney's office in Big Spring, Texas, and by Mr. Busby, who was a deputy sheriff in Howard County. Mr. Mayfield further testified that he interrogated Petitioner in the presence of Mr. West and Mr. Busby and, after the interrogation, informed Petitioner that he was not required to make a statement of any kind. According to Mr. Mayfield's testimony, which was corroborated in every important detail by the testimony of Mr. West and Mr. Busby, Petitioner then voluntarily dictated a statement to Mr. West, who typed it and presented it to Petitioner. It was signed by Petitioner who marked it with an "X" and later admitted into evidence in Cause No. 1988. The testimony of these three law enforcement officers furnishes ample support for the findings of fact and conclusions of law in the order of May 5, 1970, entered by the 106th Judicial District Court. Consequently, this Court is of the opinion that Petitioner's claim presented under the holding of Jackson v. Denno, *supra,* is without merit and should be denied.

Issue Presented Under Turner v. State of Louisiana

█ Since the constitutional question raised by the record under the holding in Jackson v. Denno, 378 U.S. 368, 84 S. Ct. 1774, 12 L.Ed.2d 908 (1965), has now been disposed of, this Court can pro-

ceed to consider and decide Petitioner's original allegation that he was deprived of his right to an impartial and unbiased jury as required by the holding in Turner v. State of Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1964). After considering the testimony that was presented to this Court on two separate occasions, February 9th and 18th, and after examining the briefs and the entire record, this Court is of the opinion that Petitioner was not deprived of his right to an impartial and unbiased jury.

In Turner v. State of Louisiana, *supra*, the members of the jury were sequestered in accordance with Louisiana law during the course of trial, and were placed in charge of the sheriff by the trial judge. The jurors were continuously in the company of deputy sheriffs during the three days the trial lasted. "The deputies drove the jurors to a restaurant for each meal, and to their lodgings each night. The deputies ate with them, conversed with them, and did errands for them." Turner v. State of Louisiana, *supra* at 468, 85 S.Ct. at 547. Two of the deputies that were in charge of the jurors, Rispone and Simmons, were key witnesses for the prosecution and, although the facts established that they did not discuss the case with the jurors, the Supreme Court stated that "it would be blinking reality not to recognize the extreme prejudice inherent in this continual association throughout the trial * * *." Turner v. State of Louisiana, *supra* at 473, 85 S.Ct. at 550. Under the circumstances, the Supreme Court reversed the judgment of the State Court and held that the conduct of the trial had violated the Fourteenth Amendment.

In the instant case, Mr. Mayfield, who was Sheriff of Dawson County at the time of trial, acted as bailiff in Cause No. 1988. He also was a key prosecution witness in that he took the stand to lay the predicate for the submission of the confession given by Petitioner. At the evidentiary hearing held by this Court, Mr. Mayfield testified that the trial in Cause No. 1988 lasted approximately one day. During the trial, he took the jury to lunch and ate with them. Although he talked with the jurors during the lunch, the case was not discussed in any way. Later in the day, during the jury's deliberation, Mr. Mayfield testified that he took some soft drinks into the jury room at the jury's request. However, he was in the room only briefly and did not remember talking to any juror at that time. There was also evidence to the effect that Mr. Mayfield retired the jury from the courtroom during trial once or twice when the attorneys wanted to present matters to the Court outside the presence of the jury. Although there was testimony from other witnesses at the evidentiary hearing that Mr. Mayfield's association with the jury was much more intimate than he outlined, he testified that the above brief associations were the only ones he had with the jury.

Mr. McLaughlin, who was foreman of the jury in Cause No. 1988, also testified at the evidentiary hearing held by this Court and his testimony is consistent with that given by Mr. Mayfield. For example, while Mr. Mayfield testified that he was in the jury room during deliberation only long enough to deliver some soft drinks, other witnesses testified that he stayed in the jury room for two or three hours. In this regard, Mr. McLaughlin testified as follows:

Question: Who did you come up here with?

Answer: Henry (Mr. Mayfield) rode with me. He called me last night from Ackerly.

Question: Did you-all talk about this case on the way up here?

Answer: Well, pro and con, yes, sir.

Question: And did you discuss with him the contentions that were made here?

Answer: Did I?

Question: I mean did you tell him, "Now, Henry, this fellow says you came in there and stayed on and off

for two to three hours." Did you-all discuss that?

Answer: I told Henry, I believe, what George told me, that he was in there an hour, and I said, "Well, Henry, the jury didn't deliberate an hour." And he said, "Well, now, I don't remember." I said, "Well, I don't believe the jury was out an hour." [Transcript, page 61.]

Mr. McLaughlin also stated at another point in his testimony, after commenting that Mr. Mayfield did bring in soft drinks during the jury deliberation, the following:

Question: And is it your testimony that he (Mr. Mayfield) was not at any other time in the jury room?

Answer: During the deliberations?

Question: Yes.

Answer: Oh, no, no. No, I believe I would have asked him to leave. Well, he is an intelligent man, he wouldn't have stayed in there. [Transcript, page 51.]

This Court was particularly impressed by the candor and forthrightness of Mr. McLaughlin and finds, in accordance with his and Mr. Mayfield's testimony, that the associations enumerated by their testimony were the only associations with the jury that the bailiff, Mr. Mayfield, had during the trial in Cause No. 1988. This Court further finds these associations in Cause No. 1988 were not as continuous or intimate as those found in the *Turner* case and that the length of trial, the number of contacts, and the substance of the associations differed significantly. Moreover, it is the opinion of this Court that Mr. Mayfield's associations with the jury were so minimal that it was extremely unlikely that any prejudice to Petitioner could occur. Consequently, this Court finds that Petitioner was not prejudiced in any way by Mr. Mayfield's associations with the jury. Also, this Court is given added confidence in its finding of no prejudice in light of its belief that the jury in Cause No. 1988 was a very

independent one. From the testimony of Mr. McLaughlin, this Court is convinced that the jury was jealous of its role in the judicial process and would have resented and resisted any improper attempt by any person, either directly or indirectly, to influence it.

It should be observed that this Court has found that Mr. Mayfield was a key prosecution witness. His testimony, which was challenged at trial, laid the predicate for the admission of Petitioner's confession, which was instrumental in his conviction. However, before the *Turner* case is applicable, there must be findings that (1) the jury custodian's testimony was central to the development of the prosecution's case and (2) his contact with the jury was continual and intimate. Jackson v. Beto, 388 F.2d 409, 411 (5th Cir. 1968). See also Crawford v. Beto, 385 F.2d 156 (5th Cir. 1967) and Bowles v. State of Texas, 366 F.2d 734 (5th Cir. 1966). In light of the finding that the second condition is not present in the instant case, this Court concludes that the *Turner* decision is not applicable here. Accordingly, Petitioner was not deprived of his right to an impartial and unbiased jury under the Fourteenth Amendment and his application should therefore be denied.

Petitioner raised one other question in his application regarding Turner v. State of Louisiana, 379 U.S. 466, 85 S. Ct. 546, 13 L.Ed.2d 424 (1965): Is the decision retroactive? In light of the disposition of the case, this Court can say as Judge Brown said in Crawford v. Beto, *supra*, 385 F.2d at 156: "Because we reach the merits of petitioner's appeal and find them wanting, we may assume without deciding that *Turner* is retroactive."

This opinion will serve as findings of fact and conclusions of law as to the issue presented under the holding of Turner v. State of Louisiana, *supra*.

### Order

It is accordingly ordered, adjudged and decreed that Petitioner's application

for writ of habeas corpus be and is hereby denied in all respects.

Since Petitioner should be released into the custody of Respondent in light of the above order, it is further ordered that the United States Marshal release custody of Rudy Gonzales, Petitioner, to the Respondent, Dr. George J. Beto, at Lubbock, Texas, on or before August 17, 1970.