UNITED STATES of America,
Plaintiff-Appellee,

v.

David Connell COX, Defendant-
Appellant.

No. 73–1822

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Nov. 15, 1973.

Arthur I. Ungerman, Dallas, Tex. (Court-appointed), Fred Time, Dallas, Tex., for defendant-appellant.

Frank D. McCown, U. S. Atty., Richard Stevens, Asst. U. S. Atty., Ft. Worth, Tex., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and DYER and SIMPSON, Circuit Judges.

DYER, Circuit Judge:

Cox appeals from his jury conviction of using a telephone to willfully threaten

---

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

to damage or destroy property by means of an explosive in violation of 18 U.S.C.A. § 844(e). He urges that four errors by the court below require reversal: (1) that Cox's confession given to United States Special Agents was erroneously admitted due to its involuntary nature; (2) that the court erred in refusing to grant a mistrial following prejudicial testimony of a Government witness to the effect that Cox was a convicted felon; (3) that the trial court's failure to specifically instruct the jury to disregard the prejudicial portion of the Government witness' testimony constituted error; and (4) that the court erroneously overruled an objection to the testimony of another Government witness regarding a previous telephone threat made by Cox. Finding each objection unmeritorious, we affirm.

On April 3, 1972, the switchboard operator at the Reserve Life Insurance Company in Dallas, Texas, received a telephone call conveying an ominous message: "A bomb will go off in one hour if you don't get rid of Connie Pate." Fortunately, the threat proved to be a hoax. On the morning of April 6, 1972, two Special Agents went to the Dallas City jail to interview David Cox, the defendant, in connection with an unrelated offense involving a violation of federal firearms regulations. At the outset of this interview, the agents advised Cox of his rights and obtained from him a signed waiver. The ensuing interrogation related exclusively to the alleged firearms violation, and no reference was made to the telephone threat of April 3. At approximately 5:00 P.M. on the same day, the two agents returned to Cox's cell and questioned him concerning the bomb threat. At this time, the officers again advised Cox of his rights and obtained a signed waiver, which was subsequently lost or destroyed. During the course of this interview, Cox confessed that he made the unlawful call.

At the time of the second interview, Cox appeared nervous and restless to the interrogators, which prompted Special Agent Arnold to inquire whether the defendant was perhaps "strung out." Cox apparently indicated to the agents that he had been under medication for asthma and that his arrest had prevented further access to prescribed drugs. However, Cox at no time during the interrogation indicated any desire to terminate the interview, nor did he complain of any discomfort except to inform the agents as they were leaving that he was cold. The agents were persuaded that Cox was coherent and rational since he was fully able to carry on a lengthy conversation after having expressly waived his rights.

During the course of Cox's trial, the two agents testified with respect to the defendant's jail-cell confession over the objection that the statement was rendered involuntary by Cox's drug-influenced condition. Further, during cross-examination, Agent Griffin stated that the first interview with Cox on April 6 was in connection with the offense of "Possession of a Firearms [sic] By a Convicted Felon." This description erroneously related the exact nature of the pending charge against Cox, since the relevant offense did not pertain simply to possession of firearms by convicted felons.[1] Cox's prompt objection to that portion of the testimony concerning the defendant's being a convicted felon was sustained by the court, and the jury was instructed upon counsel's request to disregard the statement. The defendant thereupon moved unsuccessfully for a

---

1. The exact charge pressed against Cox, although not entirely clear from the record, was apparently "Unlawful possession or receipt of firearms." Appellant contends that the only act proscribed by the United States Code resembling the alleged offense attributed by Griffin to Cox is "Firearms possessed by a convicted felon," 18 U.S.C.A. § 3611, and that the section is completely inapplicable to the circumstances in Cox's case. Hence, appellant argues that the agent's reference to "convicted felon" was completely unnecessary and erroneous.

mistrial on the grounds of the prejudicial nature of the statement.

Later in the trial, the Government called Mrs. Mattie Evelyn Carson, Connie Pate's mother, who testified that the defendant had previously telephoned her and threatened to kill several persons, including Connie. This testimony was allowed over Cox's objection that Mrs. Carson was relating an account as to "extraneous acts" which were highly prejudicial to the defendant.

### Admissibility of Cox's Confession

On appeal, Cox invokes a wholly inapplicable principle of law in attacking the court's finding of voluntariness. He contends that the Government failed to prove with "unmistakable clarity" that the confession was voluntary, as required by Sims v. Georgia, 1967, 385 U. S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593. *Sims* is singularly inapposite to the case *sub judice* inasmuch as that decision simply required that the *judge's conclusion* of voluntariness appear with unmistakable clarity on the record. 385 U.S. at 544, 87 S.Ct. 639.

■ *Sims* aside, the relevant standard governing proof of voluntariness was enunciated by the Supreme Court in Lego v. Twomey, 1972, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618, which held that the Government's burden in such cases is to prove voluntariness by a preponderance of the evidence, not beyond a reasonable doubt. 404 U.S. at 489, 92 S.Ct. 619.

Turning to the evidence adduced at trial, three pertinent facts are somewhat supportive of Cox's position. Unlike the results of the first interview with the defendant on April 6, the Government was unable to produce the written waiver of rights which Cox signed at the outset of the afternoon interview. Second, and more importantly, Cox appeared nervous and restless during the interview, causing one agent to inquire of Cox whether he was "strung out." Finally, certain details, e. g., the cost of the telephone call, related by Cox in his

confession were not substantiated by the Government, and, indeed, considerable doubt as to their accuracy was raised at trial.

The Government's evidence, on the other hand, showed that Cox was fully informed of his rights and signed the waiver form. Throughout the lengthy interview, which Cox never sought to terminate, the defendant appeared fully coherent and rational. Moreover, Cox at no time complained of nervousness or incapacity or that his restlessness affected his comprehension.

■ Under the *Lego* standard, it seems clear that the Government carried its burden. Cox's apparent nervousness was not so severe as to prevent his coherent participation in the interview or even to elicit a complaint from the defendant concerning his state of mind. In this regard, this Court recently held in a similar case that the defendant's complaint to FBI interviewers of mild symptoms resulting from withdrawal from methadone did not support a conclusion that the defendant was so incapacitated as to render his statement involuntary. United States v. Harvey, 5 Cir. 1973, 483 F.2d 448. Moreover, even assuming the falsity of certain details related by Cox, these inaccuracies could have been intentional, or could have stemmed simply from a faulty recollection of specific details. It strains credulity to suggest that such immaterial discrepancies as the cost of the telephone call contained in a detailed confession strongly indicates the involuntary nature of the statement.

### Testimony of Agent Griffin

■ When, during cross-examination, Agent Griffin stated that Cox had previously been charged with "Possession of a Firearms by a Convicted Felon," defense counsel promptly interposed an objection, which the court sustained. Moreover, upon counsel's request, the court immediately instructed the jury to disregard the contested statement. This instruction, despite Cox's protestations

on appeal, was sufficient to accommodate counsel's request. Indeed, counsel failed to move for more specific instructions after the court's charge, electing instead to move for a mistrial. In any event the mistaken response was clearly "invited by appellants' own counsel. . . ." United States v. Pentado, 5 Cir. 1972, 463 F.2d 355, 362, and if there was error we are firmly convinced that the court's immediate instruction to the jury to disregard the contested portion of Griffin's statement sufficiently cured the testimony of any prejudicial effect.[2]

### Testimony of Mrs. Carson

Finally, Cox contends that the court erred in overruling the objection to the testimony of Mrs. Carson regarding Cox's previous threats against Connie Pate, among others, made to the witness in a telephone conversation. The defendant argues that this testimony related to "extraneous offenses" inasmuch as Cox was threatening to commit homicide in his conversation with Mrs. Carson, whereas during the call which is the subject of the present charge Cox made a false bomb threat. This argument will simply not withstand scrutiny.

 Although otherwise inadmissible to prove criminal propensities or character, evidence of similar acts by a defendant is properly allowed where the proffered testimony tends to demonstrate intent, motive, or a pattern of conduct. *See* United States v. Goldsmith, 5 Cir. 1973, 483 F.2d 441; United States v. Gossman, 5 Cir. 1972, 455 F. 2d 967; United States v. Pittman, 5 Cir. 1971, 439 F.2d 906. In this case, Mrs. Carson's testimony tended to prove a pattern of conduct by Cox in engaging in threats by telephone, which is, of course, the basis of the offense charged against him by the Government. Moreover, as the court below

properly noted, Mrs. Carson's testimony also tended to prove Cox's intent or motive in making the bomb threat, a necessary inquiry since 18 U.S.C.A. § 844(e) expressly prohibits only willful misconduct. Consequently, despite its probative dangers, the testimony was properly allowed.

The judgment of the district court is affirmed.

---

2. Our conviction is reinforced by the fact that disposition of a motion for a mistrial is a matter entrusted to the sound discretion of the trial court. United States v. Pritchard, 5 Cir. 1969, 417 F.2d 327, 328. We cannot agree that the court's failure to grant the appellant's motion constituted an abuse of discretion under the circumstances of this case.