**Gary Dean HARGER, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F-81-486.**

Court of Criminal Appeals of Oklahoma.

Feb. 28, 1983.

As Corrected March 2, 1983.

Rehearing Denied March 28, 1983.

David C. Butler, Enid, for appellant.

Jan Eric Cartwright, Atty. Gen., G. Scott Ray, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

CORNISH, Judge:

Gary Dean Harger was convicted in the District Court of Garfield County of Murder in the First Degree, and sentenced to life imprisonment.

Evidence at trial showed that on April 12, 1980, the appellant strangled his ex-wife, Cynthia Harger. With the help of his brother he drove her car to a bar and left it there to give the impression that she had disappeared from there. The two men then drove to an oil field location and unsuccessfully attempted to bury the body. The next day, the appellant disposed of the body by placing it in a trash pit by an oil well. Cement blocks were secured by rope to the deceased's ankles and neck to prevent her corpse from rising to the surface and being discovered.

## I

It is initially asserted the trial court erred in ruling that statements made by the appellant were voluntary and therefore admissible into evidence. These statements led to the recovery of his wife's body. The principal argument is that the statements were induced by a promise they would not be used against the appellant at trial.

A confession will not be admitted into evidence in a criminal trial unless it is found to be voluntarily given. The use of a defendant's confession obtained by coercion, whether physical or mental, is forbidden by the Fourteenth Amendment. The admission in evidence of such confession over objection vitiates the judgment of conviction. *Payne v. Arkansas,* 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958).

The record shows that during questioning, *with counsel present,* and after being fully advised of his *Miranda* rights, the appellant was asked if he would divulge the location of the body so that the victim could receive a "decent burial." When the sheriff was informed as to the general location, the appellant was asked to be more specific in his directions. He then drew a map showing where the body had been placed. Before turning the map over to the sheriff, appellant's attorney asked, "You won't use this against him will you?" The sheriff then responded, "I'll give it back to him." The map was subsequently returned to the appellant's attorney, but the evidence received pursuant to the information given to the investigating officer was used at trial.

Appellant relies on *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), for the proposition that an inadmissible confession renders all evidence received pursuant to that confession inadmissible. In *Brewer,* after the defendant was arrested and was being transported to another location, a police detective, knowing that the defendant was deeply religious and an escapee from a mental hospital, exerted psychological pressure on him to disclose the location of the victim's body. The detective persuaded the defendant that the victim's parents were entitled to a Christian burial for the little girl, who had been taken away on Christmas Eve.

*Brewer,* however, is readily distinguishable from the case at bar; the Supreme Court there held the confession to be involuntary due to the violation of the defendant's right to counsel. In the present case, legal counsel was present during questioning and actually handed the map to the sheriff.

The question of whether a confession is the product of a free will must be answered on the facts of each case. No single fact is dispositive. *Brown v. Illinois,* 422 U.S. 599, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). That the sheriff asked the appellant to divulge the body's location so that the victim could be buried is the only parallel with *Brewer,* supra, and that alone is not determinative. There is no indication that the appellant's will was overborne. The record shows that the appellant made his statements under circumstances free from coercion or threats, lengthy interrogation, or prolonged isolation from family or friends.

With counsel present, he voluntarily told Sheriff Pickle that his wife's corpse was in the Waukomis area. We are not persuaded by the argument that the "promise" not to use in evidence the map which he later drew induced the appellant to confess. To the contrary, the facts on the record indicate that the appellant agreed to cooperate and drew the map *after* he had already divulged the general location of the body and *before* there was any discussion between his attorney and the sheriff about its use in evidence. This, at the very least, shows that there had been no promise or inducement extended before-hand. And, too, it is significant that the suggestion that the map not be used in evidence came from his own counsel, with the sheriff's response being merely that he would give it back.

We are not here to determine the enforceability of, or what it was that the parties intended by this "agreement," if one at all. Rather our task is to determine whether the appellant's Fifth Amendment

right against self-incrimination was violated. The totality of the circumstances and the sequence of events convince us that the map and the evidence derived therefrom were not illegally procured. We find that the statements were the product of the appellant's free and rational choice, made after having been fully advised of his rights, and *with counsel present.* The trial judge therefore properly admitted them as well as the fruits derived therefrom.

■ The appellant also claims the trial court denied him a hearing on the issue pursuant to *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). The record reflects, however, that the preliminary hearing was interrupted for the purpose of allowing the defense to argue and to present evidence in support of his motion to suppress the confession and resulting evidence. The defense's argument focused on the issue of voluntariness and was followed by the court's finding that the confession and resulting evidence were admissible. In *Sims v. Georgia,* 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593 (1967), it was determined by the Supreme Court that a trial judge need not make formal findings of fact in order to comply with the rule requiring a finding of voluntariness. However, the conclusion of the judge that the confession is voluntary must appear from the record with "unmistakable clarity." The ruling admitting the confession satisfied this requirement as well as the requirement that a defendant have a hearing on the voluntariness of his confession *at some stage* in the proceeding before submission to the jury. See *Jackson v. Denno,* supra at 376–377, 84 S.Ct. at 1780.

The district judge who tried the case likewise admitted the confession into evidence; his findings on the issue are reflected in a journal entry in the original record in which he states he examined the transcripts of the proceedings on the matter and found the confession was voluntary.

■ The appellant next asserts the trial judge abused his discretion in refusing to instruct the jury as to the voluntariness of his custodial confession. Oklahoma procedure requires that after the trial judge has made an independent determination that the confession was voluntary, the issue is to be reconsidered by the jury upon proper instructions. Here, however, the appellant in his defense made the same admissions at trial. Therefore, any error in refusing to instruct the jury to consider the voluntary nature of the appellant's custodial admissions was harmless where the custodial statements had been properly admitted into evidence and were restated in substance by the accused in his testimony.

## II

In his fifth proposition of error the appellant maintains the trial court erred in introducing two photographs depicting the victim's body as recovered from the oil field trash pit. The appellant asserts that these pictures were unnecessarily prejudicial and inflammatory.

■ The general rule is that where the probative value of photographs is outweighed by their prejudicial impact on the jury, they should not be admitted. *Breshers v. State,* 572 P.2d 561 (Okl.Cr.1977). In the case at bar, the photographs illustrated the manner in which the appellant attempted to dispose of the body. They were not gruesome, but merely showed a form wrapped in a blanket with two cement blocks tied at each end. As they tended to corroborate the appellant's confession, we find that admission was not an abuse of the trial court's discretion and does not merit reversal.

## III

■ The appellant lastly asserts the trial court erroneously sustained the State's objection to a portion of an expert witness's testimony relating to findings and conclusions of his colleague.

In his offer of proof, the defense counsel stated his witness would have testified to no more than that his clinical conclusions were consistent with those of a colleague. This would have amounted to nothing more than testimony describing a matter within the witness's personal observation and was

not hearsay. In light of the overwhelming evidence, however, error in disallowing the testimony was harmless.

For the above reasons, the judgment and sentence is AFFIRMED.

BUSSEY, P.J., concurs.

BRETT, J., concurs in part and dissents in part.

BRETT, Judge, concurring in part, and dissenting in part.

I concur that appellant should stand convicted, but not for the crime of First Degree Murder. As I view the record, the prosecution failed to prove the element of malice aforethought required in First Degree Murder. I would modify the conviction to First Degree Manslaughter and modify his sentence to forty-five (45) years.

When appellant made his inculpatory admission, describing where the deceased's body was located, he also stated before the Sheriff that "he didn't mean to kill her." (Tr. 58). The record reflects to me that the homicide occurred in the heat of passion resulting from what the deceased said to appellant during their argument. Therefore, I would modify the conviction to First Degree Manslaughter, and modify the sentence accordingly.